SLOUGH, J.
*529 Plaintiff and appellant, J. Brent Arave, brought several claims under the California Fair Employment and Housing Act (FEHA) ( Gov. Code, § 12900 et seq. ) against his former employers, Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), Bank of America (BoA), his supervisor Joseph Holsinger, and a human resources supervisor, Katherine Anderson (collectively, defendants). He sought to recover damages caused by discrimination, harassment, and retaliation based on his membership in the Church of Jesus Christ of Latter-day Saints. He also sought damages for nonpayment of wages ( Lab. Code, § 201 ) and whistleblower retaliation ( Lab. Code, § 1102.5 ).
After a five-week trial, the jury returned a verdict in favor of defendants on all counts that had survived summary judgment and dismissal. The trial court *530 denied Arave's posttrial motions and awarded defendants, as prevailing parties, $54,545.18 in costs, $29,097.50 in expert witness fees, and $97,500 in attorney fees incurred defending against Arave's wage claim.
Arave appeals the verdict and the award of fees and costs. He maintains:
(1) The trial court made numerous evidentiary errors, which prejudiced Arave;
(2) Defense counsel committed prejudicial misconduct;
(3) The trial court's bias deprived him of a fair trial;
(4) The trial court committed prejudicial error by instructing the jury certain evidence could not constitute harassment attributable to his employers;
(5) The jury's verdict was not supported by substantial evidence because defendants conceded they subjected Arave to an adverse employment action;
(6) The trial court erred in denying Arave's motion for a new trial;
*124 (7) The trial court erred by awarding defendants $97,500 in attorney fees on Arave's wage claim despite not finding the claim frivolous;
(8) The trial court erred in awarding defendants costs and expert witness fees on Arave's FEHA claims despite finding the claims nonfrivolous; and
(9) The trial court erred in granting summary judgment in favor of individual defendant Katherine Anderson on Arave's harassment claim.
Defendants cross-appeal, contending the trial court abused its discretion when it determined Arave's FEHA claims were not frivolous and denied them attorney fees on those claims.
We affirm the trial court in all respects but two. We conclude the trial court erred by awarding $83,642.68 in costs and expert witness fees though it found Arave's FEHA claims were nonfrivolous, and therefore reverse the order making the award. However, because a portion of the award may be attributable to Arave's wage claim, we will remand for the trial court to make that apportionment, as appropriate. We also conclude the trial court erred by awarding $97,500 in attorney fees on the wage claim without determining whether that claim was frivolous. We will remand for the trial court to make that determination.
*531 I
FACTUAL BACKGROUND
A. Overview
The impetus of this employment discrimination case was an anonymous employee satisfaction survey conducted on behalf of BoA and Merrill Lynch in August and September 2010.[1] Arave, who is a member of the Church of Jesus Christ of Latter-day Saints (Mormon Church or LDS), was then the managing director of Merrill Lynch's Desert Inland Empire Complex, which comprised five offices, approximately 95 financial advisors, and approximately 120 to 140 total employees. The survey contained negative comments about Arave's leadership, many of them focused on the accusation he showed favoritism toward members of his church (Mormons).
The survey results became available in December 2010. However, Arave did not review the results until his new regional manager, Joseph Holsinger, emailed everyone in the region about them in January 2011. Holsinger was new to the job. BoA had promoted him from director of another complex to regional managing director of the southwest market, and he began the new job on January 3, 2011. He received the survey results on January 7, 2011 and emailed all employees in his region about them on January 17, 2011. Holsinger said he wanted to ensure his employees he had read all their comments and let them know they could count on receiving meaningful responses from management.
Arave replied by email to Holsinger to say he had not seen the survey, but wanted to respond, and to express interest in being promoted to director of a larger complex in Orange County. In the ensuing days, Holsinger informed Arave he would not be considered for the promotion, told him the survey comments were one reason *125 why, and met with him to discuss responding to the religious favoritism comments. Holsinger encouraged Arave to address everyone in his office and "take ownership" of the environment which led to the perceptions of favoritism expressed in the survey. Initially, Arave seemed receptive to addressing the issue, but later said he did not want to address the religious favoritism comments, and said he did not appreciate being asked to apologize for his religion. According to Arave, he regarded the comments themselves as harassing and had told both Holsinger and Katherine Anderson-a BoA human resources manager Holsinger had charged with helping Arave respond to the comments-that he viewed them as such. *532 On March 17, 2011, Arave's attorneys sent BoA a letter complaining of religious discrimination and retaliation. According to the letter, the comments were acts of religious discrimination and Arave was their victim. He accused BoA of failing to investigate the discriminatory comments, denying him a promotion based on the comments, requiring him to apologize for his religion, and otherwise creating a hostile work environment. BoA began an investigation into Arave's accusations. Though a third party hired to conduct the investigation sought to interview him, Arave found the person hostile and refused to be interviewed.
On March 29, 2011, Arave resigned and later filed suit against BoA, Merrill Lynch, Holsinger, and Anderson. In addition to Arave, Holsinger, and Anderson, the primary witnesses were Gregory Franks, the divisional director of the Merrill Lynch western region and Holsinger's superior and two human resources management personnel-Wendy Wall and Mary Mack. Wall was a senior vice president in the human resources department who reported to Franks and supervised Anderson. Mack was a vice president and team manager in the department which investigated discrimination complaints (Advice and Counsel), and she consulted with Anderson and Wall about the survey comments. The facts as we recount them come from the testimony of those six witnesses and trial exhibits they discussed.[2]
B.-G.**
H. Trial, Verdict, and Award of Fees and Costs
In May 2011, Arave filed a lawsuit in Riverside Superior Court, alleging seven causes of action against BoA, Merrill Lynch, and unnamed defendants:
(1) Religious discrimination ( Gov. Code, § 12940 et seq., cause 1);
(2) Religious harassment ( Gov. Code § 12940, subd. (j), cause 2);
(3) Retaliation ( Gov. Code, § 12940, subd. (h), cause 3);
(4) Whistleblower retaliation ( Lab. Code, § 1102.5, subd. (c), cause 4);
(5) Failure to prevent discrimination ( Gov. Code, § 12940, subd. (k), cause 5);
*533 (6) Wrongful termination in violation of public policy (cause 6); and
(7) Failure to pay wages ( Lab. Code, §§ 201, 208, 227.3, and 2926, cause 7).
Arave named Holsinger and Anderson as individual defendants on the claim for harassment, cause 2. The trial court granted summary judgment on the harassment claim as it related to Anderson, an order Arave appeals. The trial court also granted *126 summary judgment on the whistleblower retaliation claim, which Arave did not appeal.
A jury trial of Arave's remaining claims began on August 7, 2013. After the close of evidence, Arave voluntarily dismissed the claim for wrongful termination in violation of public policy, cause 6. On September 11, 2013, the jury returned a verdict in defendants' favor on all remaining claims. The jury found defendants did not subject Arave to an adverse employment action or constructively discharge him (cause 1), did not subject him to unwanted harassing conduct on the basis of his religion (cause 2), did not subject him to a material and adverse change in the terms and conditions of his employment after he complained of religious discrimination (cause 3), and did not fail to prevent discrimination (cause 5). The jury also found Arave did not have any accrued vacation time as of the date of his separation.
After trial, the trial court denied Arave's posttrial motions and awarded defendants, as prevailing parties, $54,545.18 in costs and $29,097.50 in expert witness fees, as well as $97,500 in attorney fees incurred defending against his wage claim. The court denied defendants attorney fees on Arave's FEHA claims on the ground the claims were not frivolous. We set out the details on the ruling on fees and costs in parts II.G. and II.H., post.
II
DISCUSSION
A. Evidentiary Rulings
Arave contends the trial court made a series of erroneous evidentiary rulings which deprived him of a fair trial. We review rulings on the admissibility of evidence for abuse of discretion, and reverse only where there is a clear showing the trial court exceeded the bounds of reason under all the circumstances. ( People ex rel. Lockyer v. Sun Pacific Farming Co. (2000) 77 Cal.App.4th 619, 639-640, 92 Cal.Rptr.2d 115.) Even where a trial court has erred, we will not reverse the judgment unless the error resulted in a miscarriage of justice-in this context, where appellant shows a *534 more favorable result was reasonably probable absent the error. ( Cal. Const., art. VI, § 13 ; Saxena v. Goffney (2008) 159 Cal.App.4th 316, 332, 71 Cal.Rptr.3d 469.)
1.-2.***
3. Order admitting prelitigation demand letter
Arave contends the trial court abused its discretion by allowing defendants to introduce his March 17, 2011 letter to Merrill Lynch, which set out his complaints against the company and offered to resolve them in return for payment of five years' salary and bonuses and the proceeds of his stock plan. According to Arave, the letter was a prelitigation settlement offer made inadmissible by Evidence Code section 1154.
"Evidence that a person has accepted or offered or promised to accept a sum of money or any other thing, act, or service in satisfaction of a claim, as well as any conduct or statements made in negotiation thereof, is inadmissible to prove the invalidity of the claim or any part of it." ( Evid. Code, § 1154.) Admission of such evidence to prove invalidity of the claim is error. ( Moving Picture Etc. Union v. Glasgow Theaters, Inc . (1970) 6 Cal.App.3d 395, 401, 86 Cal.Rptr. 33 ( Moving Picture ).)
"It is well settled, however, that the rule which excludes offers of compromise *127 does not apply to statements which are in nowise connected with any attempt of compromise or are statements of fact independent of an offer of compromise ... [¶] In considering whether a person's statement amounts to an ordinary admission or constitutes an offer of compromise, the intention of the party is dispositive ... [I]f the party making the proposal apparently intended to make no concessions but to exact all that he deemed himself entitled to, the proposal is an ordinary admission against interest and not an attempt to compromise." ( Moving Picture , supra , 6 Cal.App.3d at p. 402, 86 Cal.Rptr. 33 ; see also Volkswagen of America, Inc. v. Superior Court (2006) 139 Cal.App.4th 1481, 1494, 43 Cal.Rptr.3d 723 ["If the statement was not intended as a concession but as an assertion of ' " 'all that he deemed himself entitled to,' " ' it is not an offer of compromise"].)
"[W]hen the issue involves evaluating particular facts and applying established law to those facts, to the extent the trial court's decision depends on the proper construction of sections 1152 and 1154... the issue is a question *535 of law, which we review de novo." ( Zhou v. Unisource Worldwide (2007) 157 Cal.App.4th 1471, 1476, 69 Cal.Rptr.3d 273.)
Here, the letter, the pleadings, and the trial evidence all support the trial court's ruling; they establish Arave intended the letter as an assertion of the full extent of what he deemed himself entitled to receive. We first distinguish between the portion of the letter articulating Arave's claims from the portion setting out his monetary proposal for resolving those claims. The first part sets out the factual basis for claiming defendants harmed Arave. That portion of the letter does not concede any wrongdoing on Arave's part, but simply sets out Arave's accusations of discrimination. Indeed, Arave used the letter itself in his complaint as a factual basis for his retaliation claim, saying it was a "formal written complaint to [BoA and Merrill Lynch] regarding the religious discrimination, harassment, unlawful conduct and retaliation against him by Holsinger and Anderson."
The final section of the letter sets out a proposed resolution of the dispute, which monetized Arave's harm. Arave asked the trial court to redact that portion of the letter even if it admitted the first part, but the trial court refused. The letter says, "Based upon the hostile environment created by the foregoing events, Mr. Arave proposes that he exchange a voluntar[y] resignation of his employment for the following: [¶] ... Payment of five (5) years of his income (salary and bonuses), including benefits (estimated $600,000 per year); his entire remaining Key Associate Stock Plan award ... [¶] ... Plus attorney fees and expenses."[8] Again, there is no concession on Arave's part. The letter, on its face, sets out Arave's maximal claim, not a compromise position designed to reach a settlement. ( Moving Picture , supra , 6 Cal.App.3d at p. 405, 86 Cal.Rptr. 33 [holding the language of a letter showed defendant to be admitting the full measure of liability, not making an offer in compromise].)
The trial evidence supports this reading. Arave's damages expert testified he would be expected to work to the end of 2016 and receive total compensation of about $2.6 million. Thus, when it came time to prove up his claim, Arave asked for less than what he sought in his initial demand letter. We therefore conclude the trial court's ruling *128 was not erroneous. The evidence supports a finding that Arave's letter was not an offer to compromise and is therefore not made inadmissible by Evidence Code section 1154.
In any event, even if the letter was an offer to compromise and the trial court erred in admitting it, we would find no prejudice. The factual claims in the letter are no different from the evidence Arave put on to prove liability, *536 and the proposed resolution is consistent with the expert testimony Arave put on to prove his damages. We conclude excluding the letter would not have made it more likely the jury would have reached a more favorable result.
Arave's true complaint is defendants used the timing of the letter-and the date he retained counsel-to argue he concocted his claim to escape employment without losing his income. But, as we discuss in the next section, Arave opened the door on that issue.
4.-6.†
B. Defense Counsel's Conduct†
C. Trial Court Bias
Arave contends "the trial court's prejudice and bias pervaded the entire trial and resulted in an atmosphere that was not impartial or fair," which, he says, requires this court to reverse the judgment. Specifically, Arave complains the trial court's "misconduct includes the rude and discourteous manner in which the trial court treated Arave, his counsel and his witnesses, the comments and facial expressions repeatedly made while such individuals were addressing the jury or court and/or testifying and its grossly disproportionate, one-sided and contradictory evidentiary rulings."
It is extremely difficult to establish judicial misconduct has risen to the level that requires a new trial. "Although the trial court has both the duty and the discretion to control the conduct of the trial [citation], the court 'commits misconduct if it persistently makes discourteous and disparaging remarks to defense counsel so as to discredit the defense or create the impression it is allying itself with the prosecution.' [Citation.] Nevertheless, '[i]t is well within [a trial court's] discretion to rebuke an attorney, sometimes harshly, when that attorney asks inappropriate questions, ignores the court's instructions, or otherwise engages in improper or delaying behavior.' [Citation.] Indeed, '[o]ur role ... is not to determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid. Rather, we must determine whether the judge's *537 behavior was so prejudicial that it denied [the party] a fair, as opposed to a perfect, trial.' " ( People v. Snow (2003) 30 Cal.4th 43, 78.)
1. Chastising Arave's counsel for reading from exhibits
Arave complains first that, though counsel for both parties read from documents when questioning witnesses, on three occasions "it chastised Arave's counsel in front of the jury for doing so."
The first incident occurred when the trial court interrupted Arave's counsel as she questioned Katherine Anderson about an email she received from Mary Mack.
"Q. By this e-mail Mary Mack indicated to you that: The good news is we have some pretty specific perceptions detailed in the comments. Do you see that?
*129 A. Right. Yes.
Q. During your conversations with Mary Mack did she tell you that her interpretation of the survey results was that the comments regarding religious favoritism were specific to hiring?
[Hearsay objection sustained]
Court: Counsel, we've talked about this as reading from the e-mails. I'm going to direct you not to read from the e-mails. You may inquire of counsel about the e-mails."
Counsel proceeded to ask Anderson about the exchange with Mack without interruption.
Later, outside the presence of the jury, Arave's counsel objected to the trial court's direction. The trial court explained, "If I said that, I don't want you testifying. And when you're reading these things, you're, in essence, testifying. And that's what I want to avoid." Counsel maintained her manner of questioning was appropriate on cross-examination and objected defense counsel was using the same method of questioning. The trial court maintained the approach was not an effective way of communicating with the jury, but said both parties would be allowed to read from exhibits. When the jury returned, the trial court informed the jury that "I am going to allow both counsel to read from whatever they wish to read from in terms of exhibits."
*538 The trial court objected to Arave's counsel reading from exhibits on two later occasions during the testimony of Mary Mack. First, the trial court cut counsel short as she read a series of demographic questions from the employee survey to find out whether Mack had answered them when she took the survey.
"Q. If you would look at Exhibit 979-3. For the 2010 Bank of America Employee Survey do you recall being asked how long you had been employed with the Bank of America?
A. Am I supposed to see that question on here? Or are you asking me?
Q. I'm asking you if you recall being asked-answering that question in the 2010 employee survey?
A. I don't recall.
Q. Okay. Do you recall answering the question whether you were full-time, part-time, or hourly?
A. I do not recall.
Q. Do you recall answering the question as to what band employee you were?
A. No. I'm sorry. I don't recall."
Counsel asked five more such questions before the trial court interrupted, asking "Are we going to go through every one of these questions ... for her to say she doesn't recall?" Counsel asked one more related question, and then moved on to a different topic.
Second, the trial court interrupted Arave's counsel as she questioned Mack about an exhibit containing notes about a prior complaint about Arave.
"Q. [D]oes Exhibit 1011-1 reflect the notes taken by Advice and Counsel with respect to a call from Joanne Astle?
A. Yes, it does. [¶] ... [¶]
Q. And the notes indicate that the employee was concerned about "appear FA using profanity," correct?
*539 A. Yes, I do see that. This actually represents the call from Kathy Anderson to Advice and Counsel.
Q. ... And is that testimony based on the fact that it says "call from HRM Kathy Anderson"?
A. Yes, it does.
*130 Q. And below that it says, "HRM received a call from complainant, Joanne Astle," correct?
A. Yes. This is representing a call from Kathy Anderson to Advice and counsel to ... [r]elay[ ] these concerns. [¶] ... [¶]
Q. And then she indicates that "Joanne had concerns about Brent's recruiting activities, FA." Correct?
A. I see that.
Court: Is this a reading exercise? You're just reading from the-you're just reading from this and asking her if that's what you read."
These are extremely minor incidents. As our Supreme Court has indicated, "manifestations of friction between court and counsel, while not desirable, are virtually inevitable in a long trial." ( People v. Snow , supra , 30 Cal.4th at pp. 78-79.) This trial was five weeks long, finishing the trial in a timely fashion was an issue, and the trial court evidently found counsel's manner of questioning neither effective nor efficient. But when counsel objected to the trial court directing her not to read from exhibits, the court reversed its instruction and told the jury it had done so. The two later incidents appear to relate to the trial court's understandable concern that counsel was wasting time by failing to ask direct questions. Contrary to Arave's position, these comments do not amount to expressing "negative personal views concerning the competence, honesty, or ethics of the attorneys in a trial." At worst, they are expressions of frustration at counsel's use of trial time. Even accepting Arave's representation that the court did not make similar objections to similar questioning by defense counsel, we do not believe these minor reprimands were " 'so prejudicial that [they] denied [Arave] a fair, as opposed to a perfect, trial.' " ( Id. at p. 78.)
2. Refusing to rule on Arave's counsel's objections
Arave contends the trial court prejudiced his right to a fair trial by failing to rule on two of his evidentiary objections. We see no failure on the part of the trial court.
*540 First, Arave contends the court did not rule on his objection to defense counsel playing a portion of Arave's deposition for the jury in opening statement. We have reviewed the record and conclude counsel did not effectively make a motion to exclude. Arave's counsel said only that she had an objection to defense counsel playing one of the proposed video clips. The trial court indicated it did not have the page and line citations and did not know the nature of Arave's objections. "Typically I have a deposition transcript, there's an objection-it's highlighted in one color, the objection, hearsay, foundation, whatever, and the response and ruling. So I have no way of knowing what that's about." The court and the parties moved on to other objections to defense counsel's opening presentation without providing the court with a transcript of the deposition or Arave's specific objections. When Arave's counsel later objected to the use of the deposition clip, she again failed to articulate a basis for the objection. Thus, we conclude Arave's counsel did not succeed in presenting a motion on which the trial court could rule.
Second, Arave objects the court did not rule on a motion to exclude testimony from financial advisors in Arave's complex on the perception he favored members of his religion. We read the record differently. After hearing argument, the trial court said "it seems as though that's been the-this case from the beginning, is Mr. Arave doesn't believe there was such a perception. And defense's position is, true or not, *131 there were people that held this perception, and the perception needed to be addressed, true or not." In our view, the court here indicated the evidence was relevant and would be allowed. Arave's counsel objected further that the proposed testimony was designed to show what Merrill Lynch and BoA would have found if they had conducted a proper investigation, and the trial court said it would take a look at the issue. We understand the court's comment to indicate it would think about reconsidering its ruling. When the issue arose again, Arave's counsel did not renew the motion, but "ma[d]e note of the objections filed with the court previously by way of motion." When it allowed the financial advisors to testify on the issue, the court effectively refused to change its ruling. Thus, we conclude the trial court did rule on the motion, and we see no basis at all in this exchange for finding bias.
3. Difference in treatment of witnesses
Arave contends the trial court demonstrated bias by treating his witnesses differently than the defense witnesses. Specifically, he contends the trial court allowed Holsinger, Anderson, Wall, Mack, and Duffy to provide "rambling, non-responsive answers," but repeatedly struck as non-responsive answers Arave and his expert witness gave in their testimony. We have reviewed these instances and find no basis for finding judicial bias or prejudice to Arave.
*541 4. Unfair treatment of Arave's counsel
Arave contends the trial court subverted the trial by speaking to Arave's counsel in an "openly rude and demeaning" manner and holding her "to different standards than Defendants' counsel." We disagree.
In support, Arave gives several examples of putative judicial misconduct. We have reviewed each example and find them to be minor, even allowing for the fact that we cannot discern tone from a transcript. Arave points us to incidents that formed the basis of his challenge to the court's conduct which we discussed in part II.C.1. and defense counsel's conduct which we discussed in part II.B.3. We find nothing there to give us concern about the trial court's treatment of Arave's counsel. ( People v. Farley (2009) 46 Cal.4th 1053, 1110 [" '[A] trial court's numerous rulings against a party-even when erroneous-do not establish a charge of judicial bias, especially when they are subject to review' "].)
In addition, Arave cites the following exchanges as instances of demeaning judicial conduct. First, the following exchange occurred when counsel was questioning Joseph Holsinger about his 2011 performance review:
"Q. The review that you received after taking on the Regional Managing Director position that was between the second and third quarter of 2011, would you agree that if the end of the second quarter is June and the beginning of the third quarter of July that it would have been in that time frame?
[Objection, argumentative, misstates the witness's testimony]
Court: Why don't you rephrase your question.
Q. I'm trying to find out-
Court: Just ask the question.
Q. Between the second and third quarter of 2011 you received a review from Greg Franks, right? (Italics added.)
Second, when counsel was questioning Katherine Anderson about the talking points she prepared for Arave, the following exchange occurred:
*132 Q. Did you ever provide an update of Exhibit 757-1 and 2 to Brent Arave with additional talking points beyond what you've shown us here on the religious-related comments?
*542 A. I didn't send him anything else after this-
Q. Your first-
Court: Could she finish? I'm sorry. I didn't hear the last of your answer.
A. Yeah. I was just saying I didn't send him anything else after this because I went on vacation, came back, we tried to reconnect, we didn't. (Italics added.)
Third, when counsel was questioning Wendy Wall about defendants' answers to interrogatories, which Wall verified for the corporation:
Q. So let me first ask you to look at the last page of the responses I've just handed to you and tell me if that is your signature on the verification?
A. Yes, it is.
Q. Okay.
Court: Well, ... we don't need it. If she says it refreshed her recollection, ask her the question. [¶] ... [¶]
Q. Ms. Wall, during-in this response, amended response, on Page 5, the page that I flagged for you, you indicate that you're providing the total number of employees hired or transferred into-
Court: Stop, please. Just ask her the question again that you asked her originally. Her answer was, "I don't recall." (Italics added.)
These are examples of a trial court exercising its discretion to guide the trial, directing counsel to allow witnesses to finish their answers, and directing counsel to cut to the chase in questions and away from needless complicated setups. It is frankly difficult to see these incidents as providing a legitimate basis for appeal. They certainly do not rise to the level of judicial misconduct warranting a new trial.
The remaining incidents Arave complains about are, if anything, less serious. Arave complains the trial court "allowed defense counsel to point fingers at Arave's counsel and argue that she did something wrong while repeatedly telling Arave's counsel that the trial court does not want to hear 'I'm good and he's not good.' " It is evident from the record that counsel had difficulty cooperating at trial and the trial court expressed some frustration with that fact. But all the examples Arave cites occurred outside the hearing *543 of the jury, most of them before the jury was seated, and so could not have affected the trial. Moreover, on the merits, there was nothing at all objectionable about the exchanges.
Arave objects the trial court showed its bias by "[f]orcing Arave's counsel to shave a half-day off her case and told her she was taking too much time" and by giving defense counsel "an extra 15-20 minutes for his closing after telling Arave's counsel during closing that she only had 5 minutes left, when she really had approximately 15 minutes left." Respectfully, this was a five-week trial. We have reviewed the entire transcript, and in our judgment it was longer than it needed to be. What Arave complains about here is the trial court's exercise of its broad discretion to guide litigation. We see no basis in these examples to find the court abused its discretion, much less that it exhibited judicial bias warranting a new trial.
5. Unprofessional facial expressions
Finally, Arave contends the trial court's manner of addressing Arave's counsel's arguments and objections "left *133 no doubt about the trial court's disdain for Arave, his counsel and his witnesses." He complains "when ruling against Arave on evidentiary objections, it would do so in a cheery voice" and throughout the trial "made inappropriate facial expressions and gestures ... such as rolling its eyes, grimacing, shaking its head, pursing its lips, sighing and making looks of disgust." According to Arave, this conduct "deprived Arave of the fair and impartial trial to which he was entitled."
It is obviously difficult on the paper record we receive on appeal to assess accusations that a trial court made inappropriate gestures in front of a jury. ( Bakman v. Department of Transportation (1979) 99 Cal.App.3d 665, 686 ["Those not present at the hearing cannot judge such matters as facial expressions and oral nuances"].) For that reason, it is critical for a litigant who believes a trial court is engaging in such misconduct to object immediately, thereby putting the court on notice of the need to correct its behavior and creating a record of the problem for appellate review. In cases where the litigant believes the conduct indicates judicial bias or threatens the fairness of a trial proceeding, the appropriate response is a prompt motion for disqualification under Code of Civil Procedure section 170.1, subdivision (6)(B), which provides "[b]ias or prejudice toward a lawyer in the proceeding may be grounds for disqualification."[10] Arave did not create such a record in this case, and therefore has failed to establish *544 judicial bias. In any event, we have reviewed the transcript and find nothing to suggest judicial bias, much less anything that would draw into doubt the fairness of the trial.
D.-F.††
G. Attorney Fees
The parties cross-appeal the trial court's order concerning defendants' request for attorney fees. Defendants filed a motion seeking total attorney fees of $1,203,225.56. They apportioned the total equally among Arave's claims, and therefore asked for $200,537.60 for the defense of Arave's wage claim and $1,002,687.96 for the defense of Arave's FEHA claims. Defendants requested no fees for the defense of Arave's retaliation claim under Labor Code section 1102.5, which the trial court dismissed at summary judgment.
The court denied defendants' request for attorney fees related to the defense of his FEHA claims, holding they were not entitled to fees under Government Code section 12965, subdivision (b) ( Section 12965(b) ) under Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro (2001) 91 Cal.App.4th 859, 864-865, 110 Cal.Rptr.2d 903, which held it improper to award attorney fees to prevailing defendants unless the FEHA case was "frivolous, unreasonable, or totally without foundation." The trial court said, "I understand and considered defendants' argument in the reply that you believe plaintiff fabricated evidence to get past summary judgment. But in looking at the Rosenman case, I can't say that this is that." The court remarked it "cannot find that plaintiff never had a prima facie case of discrimination, harassment, and retaliation," though it later clarified it considered the fact defendant prevailed at summary judgment only "as a threshold. But more, I considered the facts of the case."
*134 The trial court requested further evidence on the appropriate amount of fees for the wage claim, finding it inappropriate to simply award one seventh of the fees incurred defending the entire litigation. After defendants submitted billing records to support their request, the trial court awarded defendants $97,500 under Labor Code, section 218.5, for 300 hours work defending Arave's wage claim.
Arave appeals the award of $97,500, and defendants appeal the denial of attorney fees on the FEHA claims.
*545 1. Award of attorney fees on Arave's wage claim
The parties agree the trial court awarded defendants attorney fees on Arave's wage claim under the wrong standard. The Legislature amended Labor Code section 218.5 ( Section 218.5 ) effective January 1, 2014, before the trial court awarded attorney fees on the wage claim.
The amended statute provides an employer may obtain attorney fees on a claim for nonpayment of wages only "if the court finds that the employee brought the court action in bad faith." ( Lab. Code, § 218.5, subd. (a).) The legislative history indicates the Legislature intends employers to recover fees when they "defeat frivolous claims," which "would align the statute with the state and federal civil rights and employment statutes."[12] (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 462 (2013-2014 Reg. Sess.) July 2, 2013, p. 4) Thus, defendants would be entitled to attorney fees only if Arave's wage claim was frivolous. Because the trial court did not make such a finding, we will reverse and remand for the trial court to determine whether attorney fees are appropriate under the correct standard.
2. Denial of attorney fees on Arave's FEHA claims
Defendants appeal the trial court's order denying them attorney fees under Government Code section 12965 on Arave's five FEHA claims. They rightly acknowledge they are entitled to attorney fees only if they show the FEHA claims were objectively without foundation when Arave brought them or Arave continued to litigate the claims after it became clear they were objectively without basis. We review the trial court's denial of attorney fees to defendants for abuse of discretion.[13] ( Cummings v. Benco Building Services (1992) 11 Cal.App.4th 1383, 1387, 15 Cal.Rptr.2d 53.)
Defendants' argument for reversing the trial court's conclusion turns on the evidence BoA employees tried to get Arave to apologize for his religion. According to defendants, Arave survived summary judgment by falsely accusing Holsinger and Anderson of issuing or enforcing this directive. It is beyond question Arave testified, both at his deposition and at trial that Holsinger told him he would have to apologize for the atmosphere he was accused of creating. At trial, Arave said Holsinger issued that directive at *546 their January 25 meeting. But defendants claim other evidence disclosed in discovery disproved his *135 testimony and shows Arave knew his claim was objectively baseless.
Defendants point to several answers in Arave's deposition to show he knew he was not asked to apologize. According to defendants, Arave testified:
• Holsinger did not mention religion on their January 18 call.
• Arave told Holsinger he was pleased with the direction Holsinger was taking after a conference call on January 19.
• Holsinger did not ask Arave to "apologize for religion" during their January 25 meeting.
• Arave had no memory of their March 8 phone call independent of the notes from the meeting and the notes say nothing about being asked to apologize.
Defendants point out Arave admitted he had three conversations with Holsinger about the survey comments, and so he contends his deposition testimony proves Holsinger never demanded that he apologize for his religion.
However, defendants' representation of Arave's deposition testimony is incomplete. He said Holsinger asked him at their January 25 meeting "to go to the complex and say take responsibility for that, apologize for what you've done, change some of the behavior patterns that you have." At the same meeting, he said Holsinger told him he "needed to apologize for the things that I was doing around my religion that created these perceptions" and "that I'd created this environment around religion in my complex that was unhealthy." That evidence is consistent with his trial testimony, and is sufficient to convince us the trial court had a sound basis for and did not abuse its discretion in concluding Arave's FEHA claims were not frivolous or objectively baseless.
Moreover, that testimony did not stand on its own. Franks wrote Holsinger that Arave "may very well need to do a public mea culpa in front of his office in order for them to believe he has read the results and has taken them to heart. I have seen this before and it is very difficult to get buy in and to buy time without this type of response." Holsinger responded he was "already there on the mea culpa. Asked him to work with Kathy and present message to me first as devil's advocate." Though Franks denied understanding that *547 "mea culpa" means to acknowledge personal error and Holsinger tried to neutralize the email exchange by explaining the role the term plays in the Merrill Lynch business-speak lexicon, the jury could have rejected their testimony as self-serving and found the exchange to be circumstantial evidence supporting Arave's accusation that they had asked him to apologize.
In addition, Anderson confirmed Arave was upset about the issue on their March 23 call. She testified Arave got emotional discussing the issue and talked about feeling like he was being asked to apologize for his religion and kept returning to the point. Anderson said she told him that was not true. Anderson's testimony, too, provided the jury some basis for finding in Arave's favor. That they did not do so does not indicate his claim was frivolous.[14]
We conclude the trial court did not abuse its discretion in concluding an award *136 to defendants of FEHA attorney fees was not justified.
H. Award of Ordinary Costs and Expert Witness Fees
Defendants filed a memorandum of costs dated October 24, 2013 with the trial court seeking an award of $84,017.68 in costs. Defendants sought $29,097.50 in expert witness fees under Code of Civil Procedure section 998 ( Section 998 ) for three expert witnesses. The remaining fee request for $54,920.18 covered ordinary litigation costs-court filing fees ($2,400), jury fees ($2,545.76), fact witness deposition costs ($43,018.54), service of process costs ($1,695), fact witness fees ($121.88), and statutory court reporter fees ($5,139). Arave filed a motion to strike or tax defendant's memorandum of costs.
The trial court granted Arave's motion in part, but struck only $375 in costs overall and awarded defendants $83,642.68. That total comprised $54,545.18 in ordinary litigation costs under Code of Civil Procedure section 1032 ( Section 1032 ) and $29,097.50 in expert witness fees under Section 998.
1. Ordinary Costs on FEHA claims
The parties agree the trial court applied the wrong standard in awarding $54,545.18 in ordinary legal costs as of right under Section 1032.
*548 In Williams , the Supreme Court held a prevailing defendant cannot recover ordinary costs on FEHA claims "unless the court finds the action was objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so." ( Williams v. Chino Valley Independent Fire Dist. (2015) 61 Cal.4th 97, 115, 186 Cal.Rptr.3d 826, 347 P.3d 976 ( Williams ).) As we have discussed in part II.G., the trial court held the FEHA claims were not objectively without foundation, a ruling we affirm. It follows defendants were not entitled to recover ordinary costs incurred in defending Arave's FEHA claims, so we will reverse the order granting those fees.
We note, however, the holding in Williams does not preclude defendants from obtaining ordinary costs on Arave's wage claim. We are unable on the record before us to differentiate those costs, and the decision to award attorney fees lies properly with the trial court, so we will remand the case to the trial court to resolve that issue.
2. Expert witness fees on FEHA claims
Arave also contends the trial court erred by awarding defendants $29,097.50 in postsettlement offer expert witness fees under Code of Civil Procedure section 998, subdivision (c) ( Section 998(c) ). Arave argues a defendant who prevails on a FEHA claim may recover expert witness fees under Section 12965(b) only when the plaintiff's case has been found to be frivolous. Because the trial court found to the contrary, Arave contends we must reverse the award of expert witness fees.[15] We review the trial court's resolution of this issue of statutory construction de novo. ( Holman v. Altana Pharma US, Inc. (2010) 186 Cal.App.4th 262, 277, 111 Cal.Rptr.3d 554 ( Holman ).)
a. Background
On June 11, 2012, defendants made Arave an offer to compromise under Section 998. The offer proposed "to compromise *137 the claims in this action, which would constitute a final disposition of the action" by paying Arave "$100,000 for his seventh cause of action for failure to pay wages" and any statutory penalties arising out of that cause of action. Arave was to execute and file a Request for Dismissal with Prejudice of the entire action in favor of Defendants." They also proposed the parties could seek "[p]ayment of statutory costs, including attorneys' fees, reasonably incurred to the date of this offer to the prevailing party as determined by the Court" and that otherwise the *549 parties would bear their own fees and costs. They specified they made the offer "on the condition that Plaintiff will agree to execute a release as to all current claims against Defendants."
Arave did not accept the offer and the case proceeded to summary judgment and trial, which commenced nearly 14 months later on August 7, 2013. Arave prevailed at summary judgment on all but the harassment claim as it related to Anderson and the whistleblower retaliation claim. However, as we have discussed, Arave did not prevail on any of his remaining claims at trial. Arave voluntarily dismissed the claim for wrongful termination in violation of public policy after the close of evidence, and the jury found in favor of defendants on the remaining four FEHA claims and the Labor Code wage claim.
Defendants requested fees and costs as the prevailing party and included a request for $29,097.50 in postoffer expert witness fees. The trial court considered Arave's objection that the FEHA statute governs whether the prevailing party can recover expert witness fees, but determined it was appropriate "to award ... expert witness fees and costs pursuant to ... [section] 998" notwithstanding FEHA, and found defendants' offer of compromise was not unreasonable. The trial court indicated it was following the holding of the First District in Holman , supra , 186 Cal.App.4th 262, 111 Cal.Rptr.3d 554.
b. Awarding expert witness fees under Section 12965(b)
In FEHA cases, Section 12965(b) permits the trial court, in its discretion, to "award to the prevailing party reasonable attorney's fees and costs, including expert witness fees." Adopting the federal Title VII standard announced in ChristiansburgGarment Co. v. EEOC (1978) 434 U.S. 412, 416-417, 421-422, 98 S.Ct. 694, 54 L.Ed.2d 648, case law interpreting the FEHA statute has read the cost shifting provision as asymmetric-prevailing plaintiffs are presumed to receive their costs and fees, but prevailing defendants may recover only if they show the plaintiff's FEHA claims are frivolous. ( Chavez v. City of Los Angeles (2010) 47 Cal.4th 970, 984, 104 Cal.Rptr.3d 710, 224 P.3d 41 ( Chavez ).) "In enacting the FEHA, the Legislature sought to safeguard the rights of all persons to seek, obtain, and hold employment without discrimination on account of various characteristics, which now included race, religion, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, and sexual orientation." ( Id. at p. 984, 104 Cal.Rptr.3d 710, 224 P.3d 41 [citing Gov. Code, § 12920 ].) The Legislature imposed the limitation on cost shifting in favor of defendants so victims of discrimination would not be discouraged from bringing meritorious claims. ( Williams , supra , 61 Cal.4th at pp. 112-113, 186 Cal.Rptr.3d 826, 347 P.3d 976.)
*550 So, in 2010, the California Supreme Court established that an award of attorney fees to a prevailing FEHA defendant is permissible "only when the plaintiff's action was frivolous, unreasonable, without foundation, or brought in bad faith." ( *138 Chavez , supra , 47 Cal.4th at p. 985, 104 Cal.Rptr.3d 710, 224 P.3d 41.) And, five years later, the high court extended the frivolity standard to awards to prevailing defendants of ordinary litigation costs generally available in civil litigation under Code of Civil Procedure section 1032, subdivision (b) ( Section 1032(b) ). ( Williams , supra , 61 Cal.4th at p. 115, 186 Cal.Rptr.3d 826, 347 P.3d 976.) The Williams court explained "a prevailing plaintiff should ordinarily receive his or her costs and attorney fees unless special circumstances would render such an award unjust. [Citation.] A prevailing defendant , however, should not be awarded fees and costs unless the court finds the action was objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so." ( Ibid . )
Arave asks us to extend these principles and hold Section 12965(b) similarly requires a prevailing defendant to show a plaintiff's claims were frivolous to recover expert witness fees.
As a threshold matter, we agree with Arave that the standard applicable to attorney fees and ordinary costs also applies to expert witness fees for a prevailing FEHA defendant. The plain language of Section 12965(b) treats expert witness fees as a category of costs. "In actions brought under this section, the court, in its discretion, may award to the prevailing party reasonable attorney fees and costs, including expert witness fees ." (Italics added.) Though the statute does not say explicitly that expert witness fees sought by prevailing FEHA defendants are subject to the frivolity standard, that is true of requests for attorney fees and ordinary costs as well. And as we have noted, our high court has interpreted the statute as requiring defendants to prove a FEHA claim frivolous to recover attorney fees and ordinary costs. ( Williams , supra , 61 Cal.4th at pp. 112-113, 186 Cal.Rptr.3d 826, 347 P.3d 976 ; Chavez , supra , 47 Cal.4th at p. 985, 104 Cal.Rptr.3d 710, 224 P.3d 41.) As the Williams court noted, "our Legislature, like Congress before it, sought 'to encourage persons injured by discrimination to seek judicial relief' " and "[t]he Legislature could well have believed the potential for a cost award in the tens of thousands of dollars would tend to discourage even potentially meritorious suits by plaintiffs with limited financial resources." ( Williams , at pp. 112-113, 186 Cal.Rptr.3d 826, 347 P.3d 976.) Expert witness fees, which can run much higher than ordinary costs, raise precisely the same concern, and we see no basis in the statute, our case law, or public policy for treating them differently.
Federal courts have reached the same conclusion under the federal antidiscrimination statute. "[E]xpert witness fees may not be awarded to a prevailing defendant in a Title VII case unless the plaintiff's claim is *551 'frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so.' " ( AFSCME v. County of Nassau (2d Cir.1996) 96 F.3d 644, 646.) "[T]o avoid discouraging all but airtight claims, courts focus on whether a plaintiff's claim is colorable and of arguable merit when considering fee award requests from defendants. [Citation.] When a plaintiff presents some credible evidence to prove her claim, she has shown that her case has colorable merit; consequently, the prevailing defendant is not entitled to attorney's (or, in this case, expert's) fees." ( Jackson v. Entergy Operations, Inc. (E.D.La., May 4, 1998, CIV. A. No. 96-4111, 1998 WL 231019, at *2 ).) "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." ( *139 Guz v. Bechtel National, Inc. (2000) 24 Cal.4th 317, 354, 100 Cal.Rptr.2d 352, 8 P.3d 1089.) For all these reasons, we conclude FEHA authorizes a prevailing defendant to recover expert witness fees only upon showing the plaintiff's FEHA cause of action was objectively baseless. (Accord, Baker v. Mulholland Security and Patrol, Inc. (2012) 204 Cal.App.4th 776, 784, 139 Cal.Rptr.3d 235.)
This conclusion does not end our analysis, however. FEHA's Section 12965(b) may not authorize expert fee awards to prevailing defendants absent a showing of frivolity, but it does not follow it prohibits their award under another statutory provision. We must also look to Section 998(c) and decide whether it overrides the limitation on awarding expert witness fees to prevailing FEHA defendants.
c. Applying Section 998(c) to FEHA
Section 998 exists to encourage settlement of disputes, where possible, before the parties and the public have incurred the sizeable expense of conducting a full-blown trial. It applies in cases, like this one, where one party has made and the other party has rejected a settlement offer before trial. It provides "[t]he costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section. [¶] ... [¶] If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs[16 ] and shall pay the defendant's costs from the time of the offer. In addition ... the court ... in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably *552 necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration of the case by the defendant."[17] ( § 998(c).)
The question we face is whether this provision allows defendants to recover expert witness fees even though Arave's FEHA claims were not frivolous and FEHA's fee and cost provision itself bars the award of expert witness fees incurred in defending nonfrivolous claims. Our answer is no. There is a conflict between Section 998(c) and Section 12965(b) as applied in this case. Section 12965(b)precludes the trial court from exercising its discretion to award defendants expert witness fees because plaintiff's FEHA claims were not frivolous. However, Section 998(c) purports to authorize the trial court to exercise its discretion and award defendants at least a portion of their expert witness fees because they offered to settle for an amount greater than the verdict. We resolve the conflict in favor of the FEHA provision, which the Legislature enacted as part of a comprehensive statutory scheme designed to encourage victims of discrimination in employment or housing to seek relief. Because Section 12965(b) provides for the award of attorney fees, ordinary costs, and expert witness fees in FEHA actions in a way that conflicts with the generally applicable provisions for such awards, we conclude the later, more specific FEHA provisions control. (See *140 In re Marriage of Green (1989) 213 Cal.App.3d 14, 24, 261 Cal.Rptr. 294 [holding Section 998 does not apply to family law cases, because the Legislature specifically provided how costs and fees are to be awarded in such proceedings].)
Our conclusion is consistent with the plain language of the statutes as interpreted by the Supreme Court. Section 998(c) allows a trial court to award a defendant expert witness fees incurred after plaintiff declines a reasonable pretrial settlement offer, but only as an adjustment to an award of costs under Section 1032(b).[18] "The costs allowed under Section ... 1032 shall be withheld or augmented as provided in this section." ( Code Civ. Proc., § 998, subd. (a).) As the Supreme Court explained in Murillo v. Fleetwood Enterprises, Inc. (1998) 17 Cal.4th 985, 1000, 73 Cal.Rptr.2d 682, 953 P.2d 858, we must read Section 998(c) in conjunction with Section 1032(b), "including the requirement that section 998 costs and fees are available to the prevailing party '[e]xcept as otherwise expressly provided by statute.' " And in Williams , the Supreme Court held the cost shifting provision of Section 12965(b) is an express exception to the cost shifting provision of Section 1032(b), which led the high court to conclude a prevailing defendant may not obtain ordinary costs under Section 1032 if the plaintiff's FEHA claims were nonfrivolous.
*553 Williams , supra , 61 Cal.4th at p. 115, 186 Cal.Rptr.3d 826, 347 P.3d 976.) If Section 12965(b) overrides Section 1032(b), and Section 998(c) operates only as an adjustment to cost awards under Section 1032(b), it follows that Section 12965(b) overrides Section 998(c), rather than the other way around. We conclude that if a defendant may not obtain an award of costs under Section 1032(b) if plaintiff's claim are nonfrivolous, the trial court may not augment an award of costs by awarding expert witness fees under Section 998(c).
At oral argument, respondents conceded-for nonfrivolous FEHA claims-that Williams bars the trial court from awarding prevailing defendants ordinary costs under Section 998(c)(1). According to Section 998(a), such an award would be an adjustment to a cost award under Section 1032, and Williams holds the trial court may not award such costs to a FEHA defendant unless the claim was frivolous. Respondents contend Section 998(c)(1) treats expert fees differently, not as adjustments to costs that are otherwise recoverable. The statutory plain language says otherwise. Subdivision (a) provides "[t]he costs allowed under Section[ ] ... 1032 shall be withheld or augmented as provided in this section." ( § 998, subd. (a).) By its terms, then, all costs recoverable under Section 998 are reductions to or augmentations of costs awarded under Section 1032.
Nothing in Section 998(c)(1) warrants treating expert fee costs as a special case. The first clause concerns ordinary costs: "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer." The second clause concerns expert fee costs: "In addition, ... the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, *141 actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant." ( § 998 subd. (c).) These provisions are parallel, treating both ordinary costs and expert fee costs identically. If Williams bars imposing Section 998(c) ordinary costs, we conclude it bars imposing Section 998(c) expert witness fee costs as well.
The most natural reading of these statutes is that the express cost shifting provision in Section 12965(b) overrides Section 998(c). The Legislature incorporated specific cost shifting principles into FEHA. Those provisions govern the award of expert witness fees incurred either prosecuting or defending FEHA claims. This means prevailing defendants cannot obtain expert witness fees in FEHA cases where the claims against them are nonfrivolous, frustrating Section 998's policy of encouraging settlement in such cases. However, the Legislature could have incorporated a provision to *554 encourage pretrial settlement if that policy could be harmonized with the policy of encouraging victims with colorable discrimination claims to vindicate their rights without fear of facing financial hardship if they do not prevail. The Legislature did not do so, and we do not believe it is appropriate to read such a provision into Section 12965(b). ( Code Civ. Proc., § 1858 ; Maintain Our Desert Environment v. Town of Apple Valley (2004) 124 Cal.App.4th 430, 442, 15 Cal.Rptr.3d 322.)
Our holding applies only to FEHA cases in which expert witness fees are not available under Section 12965(b). In cases where a trial court has discretion to award expert witness fees under Section 12965(b), the court may consider the policies behind both Section 12965(b) and Section 998(c) in exercising its discretion. (See Williams , supra , 61 Cal.4th at p. 108, 186 Cal.Rptr.3d 826, 347 P.3d 976.) Thus, in a case where the defendant prevails after trial against a frivolous FEHA claim, the court may consider whether the plaintiff rejected a reasonable settlement offer in deciding whether to award expert witness fees. It may also consider the plaintiff's ability to pay. (See Holman , supra , 186 Cal.App.4th at p. 284, 111 Cal.Rptr.3d 554.) Similarly, in a case where plaintiff prevails after trial, the court may consider whether the defendant rejected a reasonable settlement offer in deciding whether to award the plaintiff expert witness fees. ( § 998, subd. (d).)
We recognize we are parting ways with the conclusion of our colleagues in the First District, Division Five and the Fourth District, Division One.[19] ( Holman , supra , 186 Cal.App.4th 262, 111 Cal.Rptr.3d 554 ; Sviridov v. City of San Diego (2017) 14 Cal.App.5th 514, 223 Cal.Rptr.3d 1 ( Sviridov ).) We do not find those decisions persuasive. The Holman court reached its contrary conclusion based on the premise that Section 12965(b) is not an express exception to awarding costs under Section 1032(b). The Supreme Court rejected that premise in Williams , and we are required to conform to its conclusion that Section 12965(b)is an express exception to Section 1032(b). We conclude it follows that Section 12965(b) precludes the award of expert witness fees the trial court made in this case.
The principal reason the Sviridov court reached its contrary conclusion was plaintiff had forfeited the issue of whether Williams precludes a prevailing defendant *142 from recovering costs on a nonfrivolous FEHA claim under Section 998. ( Sviridov , supra , 14 Cal.App.5th at p. 521, 223 Cal.Rptr.3d 1.) Plaintiff asserted his conclusion "with no analysis or citation to legal authority" and the court "deem[ed] the failure to support [his] statement with reasoned argument a forfeiture." ( Ibid. ) For the reasons we have discussed above, we believe a full *555 consideration of the statutes and case law compels the conclusion defendants were not entitled to an award of expert witness fees in this case.
The Sviridov court also argued "a blanket application of Williams to preclude Section 998 costs unless the FEHA claim was objectively groundless would erode the public policy of encouraging settlement in such cases." ( Sviridov , supra , 14 Cal.App.5th at p. 521, 223 Cal.Rptr.3d 1 ) However, we believe our holding is correct because it properly takes into account the public policy of encouraging FEHA plaintiffs to bring meritorious claims. Sviridov does not mention this countervailing public policy other than to note plaintiff did "not establish[ ] the court did not properly consider the policies of both provisions in making the award." ( Id . at p. 521, 223 Cal.Rptr.3d 1.) As we have discussed above, we believe allowing Section 998(c) expert fee awards to defendants who are not entitled to expert witness fees under Section 12965(b) impermissibly undermines the effectiveness of FEHA.
The Holman and Seever courts tried to avoid that result by building FEHA protections into Section 998-requiring the trial courts to consider the plaintiff's means when they make discretionary expert witness fee awards. The Seever court held in FEHA cases "consistent with the rationale of Christiansburg and like California decisions, it is entirely appropriate and indeed necessary for trial courts to 'scale' [expert witness fee] awards downward to a figure that will not unduly pressure modest- or low-income plaintiffs into accepting unreasonable offers." ( Seever , supra , 141 Cal.App.4th at p. 1562, 47 Cal.Rptr.3d 206.) The Holman court followed this approach. "[I]n assessing whether an expert fee award is reasonable in amount, at least in the FEHA context where other recognized public policy considerations apply, we agree that the court must not only look to whether the expense was reasonably incurred, but must also consider the economic resources of the offeree." ( Holman , supra , 186 Cal.App.4th at p. 284, 111 Cal.Rptr.3d 554.)
We agree the trial court may consider the means of the plaintiff as one factor in determining whether to award expert witness fees. However, the source of that authority lies in Section 12965(b)'s grant to the trial court to award expert witness fees as a category of costs. Our sister courts have gotten things backwards by building FEHA protections into Section 998. As the Holman court recognized, "[t]he Legislature has not included a means test as an element of determining awards generally under ... section 998, and imposing such a requirement would alter the settlement incentives provided by [that section]." ( Holman , supra , 186 Cal.App.4th at p. 284, fn. 30, 111 Cal.Rptr.3d 554.) The First District court suggested the means test may best be applied to FEHA cases alone ( Holman , at p. 284, fn. 30, 111 Cal.Rptr.3d 554 ), but there is nothing in Section 998 itself to suggest it is appropriate to treat FEHA litigation as a special case. ( Maintain Our Desert Environment v. Town of Apple Valley , supra , 124 Cal.App.4th at p. 442, 15 Cal.Rptr.3d 322.)
*556 Nor do we believe building a means test into Section 998 effectively protects prospective FEHA plaintiffs with meritorious claims. The test is backwards looking. It requires the trial court to exercise its discretion *143 by determining, after litigation is complete and the plaintiff has lost or obtained a smaller than desired jury award, the extent to which the plaintiff can shoulder the burden of paying the defendant's expert witness fees. Prospective plaintiffs with meritorious claims trying to decide whether to attempt to vindicate their rights would not be able to predict their exposure. Any attorney advising a prospective plaintiff would have to acknowledge they may lose even a very strong suit and end up being compelled to pay defendant tens of thousands of dollars in expert witness fees. Indeed, if we accepted defendants' position, our decision would be an object lesson for all future FEHA plaintiffs of the risk of bringing colorable discrimination claims.
Accordingly, we will reverse the order awarding $29,097.50 in expert witness fees to defendants. We note, however, that our holding does not preclude defendants from obtaining expert witness fees on Arave's wage claim. We are unable on the record before us to make that apportionment, so we will remand the case to the trial court to do so as well as to determine whether awarding such fees is appropriate.
I. Summary Judgment in Favor of Anderson†††
III
DISPOSITION
We affirm in part and reverse in part with directions as set out below.
We reverse the trial court order awarding $54,545.18 in costs as contrary to FEHA's cost shifting provision as the Supreme Court held in Williams, supra, 61 Cal.4th at p. 115, 186 Cal.Rptr.3d 826, 347 P.3d 976. (Part II.H.1., ante, p. 136.) We reverse the trial court order awarding $29,097.50 in expert witness fees as contrary to FEHA's cost shifting provision. (Part II.H.2., ante, pp. 136 - 43.) We remand for the trial court to determine whether it is appropriate to award any costs or expert witness fees on Arave's wage claim.
We also reverse the order awarding $97,500 in attorney fees on Arave's wage claim as contrary to the amended Labor Code section 218.5, subdivision (a). (Part II.G.1., ante, pp. 136 - 34.) We remand for the trial court to determine *557 whether the wage claim was frivolous, warranting an award of attorney fees in any amount.
We affirm the judgment in all other respects.
The parties shall bear their own costs on appeal.
We concur:
RAMIREZ, P. J.
McKINSTER, J.
Certified for Partial Publication.*

We certify this opinion for publication under California Rules of Court, rules 8.1105(b) and 8.1110, except for parts I.B., I.C., I.D., I.E., I.F., I.G., II.A.1., II.A.2., II.A.4., II.A.5., II.A.6., II.B., II.D., II.E., II.F., and II.I.

BoA acquired Merrill Lynch before the events of this dispute. According to human resources Vice President Wendy Wall, Merrill Lynch employees became BoA employees on January 1, 2010.

Eleven other witnesses testified at trial. We have reviewed their testimony, but do not recount it because it is not important to resolving the issues on appeal.

See footnote *, ante .

See footnote *, ante .

Arave also proposed defendants pay him an additional $3 million for his agreement not to compete.

See footnote *, ante .

We note a determination on the question of disqualification may be reviewed only by a writ of mandate (Code Civ. Proc., § 170.3, subd. (d) ), though a constitutional challenge asserting judicial bias can be raised on appeal. (People v. Chatman (2006) 38 Cal.4th 344, 362, 42 Cal.Rptr.3d 621, 133 P.3d 534.)

See footnote *, ante .

We grant defendants' motion for judicial notice of the legislative history of the amendment to Section 218.5. (Ennabe v. Manosa (2014) 58 Cal.4th 697, 709, fn. 9, 168 Cal.Rptr.3d 440, 319 P.3d 201.)

Defendants contend the trial court applied the wrong standard because it said it could not "find that plaintiff never had a prima facie case of discrimination, harassment, and retaliation." We doubt the court used the wrong standard based on this statement. The transcript of the proceedings show the court considered the proper law and applied the proper standard.

Defendants also contend Arave's FEHA claims were frivolous because (i) Arave concedes no evidence shows only one or two people wrote the survey favoritism comments, (ii) the evidence plainly establishes Anderson did give Arave talking points to address the survey results, and (iii) the Orange County complex director position was eliminated. We believe those facts detract from the weight of the evidence in favor of Arave's FEHA claims, but do not establish the claims were baseless.

Arave also contends the trial court erred in awarding defendants expert witness fees under Section 998(c) because defendants' settlement offer was not reasonable. We need not reach that issue because we conclude Section 998(c) does not allow the award of expert witness fees incurred defending nonfrivolous FEHA claims.

The Legislature amended Section 998(c) effective January 1, 2016 to limit awards to postoffer expert witness fees. Before that, and at the time of judgment in this case, it lay within the trial court's discretion to award fees incurred before the offer as well. (Regency Outdoor Advertising, Inc. v. City of Los Angeles (2006) 39 Cal.4th 507, 533, 46 Cal.Rptr.3d 742, 139 P.3d 119.)

The statute has a parallel provision for cases where plaintiffs make and defendants reject a settlement offer. (Code Civ. Proc., § 998, subd. (d).)

Section 998 awards also adjust costs allowed under Code of Civil Procedure section 1031, which is irrelevant here because it applies to "actions for the recovery of wages for labor performed, where the amount of the demand, exclusive of interest, does not exceed three hundred dollars."

Second District, Division Seven also approved an award of expert witness fees in a FEHA case under Section 998(c) in Seever v. Copley Press, Inc. (2006) 141 Cal.App.4th 1550, 47 Cal.Rptr.3d 206 (Seever ). However, the plaintiff in that case did not raise the objection that such fees are available only if the FEHA claims were frivolous.

See footnote *, ante .