[No. B180062. Second Dist., Div. Seven. Aug. 15, 2006.]

MICHAEL C. SEEVER, Plaintiff and Appellant, v.
COPLEY PRESS, INC., et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, only the Introduction, Factual and Procedural Synopsis, part VIII of the Discussion, and the Disposition are certified for publication.

COUNSEL

Mark Weidmann and Scott O. Cummings for Plaintiff and Appellant.

Sheppard Mullin Richter & Hampton, Tara Wilcox and Mary P. Snyder; and Harold W. Fuson for Defendants and Respondents.

OPINION

**WOODS, J.—**

## INTRODUCTION

Plaintiff/appellant, Michael C. Seever (Seever), appeals from an adverse judgment following a jury trial and from postjudgment orders awarding costs of suit to defendant/respondent, Copley Press, Inc. (Copley).[1] Seever contended at trial that Copley's termination of his 18-year employment was motivated by age (50 years) and disability (shoulder injury) discrimination and further Copley failed to provide a reasonable accommodation. Copley defended on the basis that Seever's termination, with 17 other people, was dictated by business necessity because the Daily Breeze was losing money as demonstrated by a projected loss of more than $2 million in 2001 alone.

For the reasons hereafter given, we affirm the judgment but reverse the postjudgment orders in part and remand for further proceedings.

## FACTUAL AND PROCEDURAL SYNOPSIS

*Seever's employment at the Daily Breeze.*

The Daily Breeze is a daily newspaper located in Torrance, California, and serves the south bay area of the County of Los Angeles. Seever worked in the

---

[1] Seever was employed by the Daily Breeze, a daily newspaper owned and operated by Copley.

maintenance department and was responsible for facilities maintenance, air conditioning, minor electrical and remodeling jobs, painting and equipment monitoring. Seever advanced from maintenance mechanic to supervisor to building superintendent, which was a salaried position with exempt status. During Seever's last position, his manager, one Tom Hellems, concluded Seever should not be doing any maintenance work himself in view of his salaried, exempt position, and he should delegate the hands-on work to employees hired on an hourly basis. By a series of performance memos directed to Seever from 1990 to 1993, Seever was directed to cease doing hands-on work and to delegate such work to other employees. Hellems thereafter no longer saw Seever doing hands-on work and had no reason to suspect Seever of disobeying his directives to be a desk manager only.

*Financial losses of the Daily Breeze.*

The Daily Breeze was in competition with the Los Angeles Times whose circulation was 14 times as large. By 2001, the Daily Breeze lost $1.296 million in the first quarter of the year with a projected loss of $2 million by year's end. In order to cut expenses, Art Wible, the Daily Breeze publisher, gave a directive to his executive team to look carefully at their respective departments and to eliminate any unnecessary positions. Two sister papers owned by Copley had been closed down in the late 1990's and Wible felt the Daily Breeze's management ranks had been bloated ever since. As part of the elimination process, Wible made the decision to eliminate the position of general manager and to assume those duties himself.

Following the analysis of the department that Hellems supervised, he noted that Seever was not actively working but had been out of work since February 27, 2001, after tripping over his cat and injuring his shoulder. Seever had been away from work for over 16 weeks in 2000 to care for his ailing wife. During Seever's absence, Hellems had asked Seever's subordinate, one Kevin McCarthy, the maintenance leadman, to handle day-to-day management duties in the department in addition to his regular hands-on maintenance duties. In spite of being without a building maintenance superintendent for eight of the last 17 months, Hellems concluded that the department was functioning adequately and capably. As a result, Hellems recommended eliminating the building superintendent's position which would result in annual savings of Seever's position in the amount of $47,000. Hellems was required to justify his recommendation in writing by human resources director Caryn Ratcliff. Ratcliff prepared a matrix comparing Seever's and McCarthy's tenure, evaluations and equal employment opportunity (EEO) data to ensure there were no red flags in eliminating Seever's position.

The Daily Breeze eliminated 18 positions, including four senior-level managers and the job of building superintendent. Contrary to a loss projection of $2 million in 2001, Copley ended up showing a loss of $4.3 million for the year.

*Seever's superior court action.*

On July 11, 2002, Seever filed an action in the Los Angeles County Superior Court against Copley Press, Inc., Daily Breeze, and 100 fictitious defendants, alleging causes of action as follows: "Complaint for damages for: [¶] (1) Disability discrimination in violation of FEHA; [¶] (2) Disability discrimination in violation of public policy; [¶] (3) Family and medical leave discrimination in violation of FEHA; [¶] (4) Family and medical leave discrimination in violation of public policy; [¶] (5) Age discrimination in violation of FEHA; [¶] [and] (6) Age discrimination in violation of public policy."

On August 26, 2002, Copley filed its "Answer of Defendant The Copley Press, Inc. to Complaint" (unverified) alleging 24 affirmative defenses on behalf of Copley alone, contending that the Daily Breeze was erroneously sued as the Daily Breeze which is an operative division of Copley and not a separate legal entity.

*Discovery and trial subpoena.*

Seever noticed and took 20 depositions. Seever also propounded 780 document demands on Copley. After close of formal discovery, Seever served a trial subpoena on Copley for every single financial document relating to Copley and its divisions over the preceding five years.

Copley responded to the subpoena by making a motion to quash on the ground the subpoena was overbroad. The trial court ordered instead that Copley produce the Daily Breeze profit and loss statements and balance sheets for the two years prior to termination of Seever, and any financial documents on which Copley planned to rely at time of trial. In response, Copley produced the Daily Breeze profit and loss statements and balance sheets called for in full. Copley also produced an annual income statement showing 2001 year-end totals for the Daily Breeze.

In the face of Seever's accusation that Copley was withholding audited financial records, Copley explained that the only audited records it had were compilations of financial data for all Copley divisions, which were never ordered produced, and that a stand-alone audited statement for just the Daily Breeze did not exist. Copley offered to produce its audited statements in

camera in light of the fact the statements contained confidential financial information relating to a privately held entity. Seever did not object and the court conducted an in camera review and determined that Copley had complied with the order of the court.

>*Jury trial, verdict, cost order, motion for new trial and motion to tax costs.*

The matter took three weeks to try. Verdict was in favor of Copley on all counts. The defense verdict was unanimous on the causes of action for failure to accommodate and medical leave discrimination. Seever made a motion for new trial, to tax costs or to strike Copley's claimed costs, which were all denied.

Seever filed a timely notice of appeal.

## *DISCUSSION**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

VIII. *Purported postjudgment errors in awarding $85,494 in costs to Copley.*

Seever contends that the trial court committed error by awarding $85,494 in costs to Copley after the judgment was entered. Seever maintains that at least $68,134 in costs was improper and an abuse of trial court discretion for the following reasons: videotaping expense for depositions never used in trial was improper; routine travel costs for attorneys to attend depositions is unwarranted; copying costs for exhibits never used at trial was likewise improper; and allowance for expert witness fees pursuant to Code of Civil Procedure section 998 was erroneous in that the section 998 offer was not in compliance with the requirement that the offer be definite and certain.

>*Standard of review.*

Both sides are in agreement that the general standard of review for a cost award is *generally* whether the trial court abused its discretion in making the award. Both sides agree and cite *Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1298 [87 Cal.Rptr.2d 497] for the proposition. Seever, however, maintains that in this case the general proposition does not govern for the reason that the facts are essentially not in dispute and a de novo standard should be applied. In our view, Copley is correct in urging this court

---

*See footnote, *ante*, page 1550.

to apply an abuse of discretion standard because this court is not called upon to interpret the statute allowing costs, but only to determine what is "reasonably necessary" and "reasonable in amount" under the statute. We would be hard pressed to find that the abuse of discretion standard is supplanted by a de novo standard in this instance, and we decline to do so.

As pointed out by Copley, the prevailing party in a lawsuit is entitled as a matter of right to recover allowable costs under Code of Civil Procedure section 1032, subdivision (b) which provides, "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." In *Rappenecker v. Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 256, 266 [155 Cal.Rptr. 516] the Court of Appeal stated, "If the items on a verified cost bill appear proper charges, they are prima facie evidence that the costs, expenses and services therein listed were necessarily incurred." The *Rappenecker* court indicated that it is not enough for the losing party to attack submitted costs by arguing that he thinks the costs were not necessary or reasonable. Rather, the losing party has the burden to present evidence and prove that the claimed costs are not recoverable. Copley maintains that Seever has not made a sufficient showing that the following items of costs were unnecessary.

*Deposition costs.*

Seever's argument against an award for the costs for videotaping depositions is based on the fact that the depositions were not used at time of trial. We note that Seever also videotaped numerous depositions which were not used at time of trial. Pertaining to the videotaping of Seever's deposition, Copley maintains that it was necessary for its trial preparation to prepare its strategy for cross-examination of the most important witness in the case. Copley additionally argues that the videotaping proved to be necessary because counsel who took the depositions was not trial counsel, thereby allowing trial counsel to review the demeanor of the witness in advance of trial. We do not find that the videotaping of depositions in this instance was unnecessary and unreasonable.

*Unused exhibits.*

Seever's argument against an allowance for the costs of preparing unused trial exhibits has merit. Code of Civil Procedure section 1033.5, subdivision (a)(12), provides, "Models and blowups of exhibits and photocopies of exhibits may be allowed [as costs to the prevailing party under section 1032] if they were reasonably helpful to aid the trier of fact." On its face this statutory language excludes as a permissible item of costs exhibits not used at trial, which obviously could not have assisted the trier of fact.

(*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 775 [23 Cal.Rptr.2d 810] [under § 1033.5, subd. (a)(12), "fees are not authorized for exhibits not used at trial"]; see *County of Riverside v. City of Murrieta* (1998) 65 Cal.App.4th 616, 629 [76 Cal.Rptr.2d 606] [request for recovery of costs for blowups and photocopies properly denied when items not reasonably helpful to trial court].)

Although acknowledging costs for exhibits not used at trial are not allowable under Code of Civil Procedure section 1033.5, subdivision (a)(12), in *Applegate v. St. Francis Lutheran Church* (1994) 23 Cal.App.4th 361, 363–364 [28 Cal.Rptr.2d 436], the Court of Appeal affirmed the trial court's award of exhibit costs to the defendants following the plaintiff's dismissal of the underlying action on the day of trial under section 1033.5, subdivision (c)(4), which provides, "Items not mentioned in this section and items assessed upon application may be allowed or denied in the court's discretion." The *Applegate* court explained, "Items not specifically allowable under [section 1033.5,] subdivision (a) and not prohibited under subdivision (b) may nevertheless be recoverable in the discretion of the court if 'reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation.' (§ 1033.5, subd. (c)(2).)" (*Applegate*, at pp. 363–364.) The court then cited a number of cases in which costs were allowed in the discretion of the trial court that were "neither specifically authorized nor disallowed by section 1033.5," including legislative history materials and the fees of a special master. (*Applegate*, at p. 364; see also *Science Applications Internat. Corp. v. Superior Court* (1995) 39 Cal.App.4th 1095, 1103 [46 Cal.Rptr.2d 332] ["Reading the two subparts of subdivision (c) together with the rest of the cost statute, we conclude, if an expense is neither expressly allowable under subdivision (a) nor expressly prohibited under subdivision (b), it may nevertheless be recovered if, in the court's discretion, it is 'reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation.' [Citations.]"].)

■ We agree with the general principle articulated in *Applegate v. St. Francis Lutheran Church, supra,* 23 Cal.App.4th at pages 363–364, and *Science Applications Internat. Corp. v. Superior Court, supra,* 39 Cal.App.4th at page 1103: If a specific cost item is not identified in either Code of Civil Procedure section 1033.5, subdivision (a), or subdivision (b), it may be awarded in the trial court's discretion under section 1033.5, subdivision (c)(4), provided it satisfies the further requirement of section 1033.5, subdivision (c)(2), that it was reasonably necessary to the conduct of the litigation.[5] However, we respectfully disagree with the *Applegate* court's further assertion that only those costs items expressly prohibited by section

---

[5] Code of Civil Procedure section 1033.5, subdivision (c)(2)'s requirement that the cost item be reasonably necessary to the conduct of the litigation is applicable to all items allowable as

1033.5, subdivision (b),[6] are outside the scope of this discretionary authority. In fact, section 1033.5, subdivision (c)(4), does not refer to subdivision (b), but rather permits a discretionary award only as to "[i]tems not mentioned in this section." While in general items set forth in section 1033.5, subdivision (a), are "expressly allowable" (*Science Applications Internat. Corp.*, at p. 1103), subdivision (a) also contains specific limitations that, in our view, circumscribe the court's discretionary authority under section 1033.5, subdivision (c)(4).

Perhaps most obviously, Code of Civil Procedure section 1033.5, subdivision (a)(10), provides attorney fees are allowable as costs when authorized by contract, statute or law. Although section 1033.5, subdivision (b), does not address attorney fees, no one would contend the trial court has discretion under section 1033.5, subdivision (c)(4), to award attorney fees as costs in a case not included within one of the three subdivision (a)(10) categories, based on a showing the fees incurred were "reasonably necessary to the conduct of the litigation." Similarly, section 1033.5, subdivision (a)(3), authorizes the recovery of costs for taking, videotaping and transcribing necessary depositions (whether or not actually used at trial), including an original and one copy of depositions taken by the claimant and one copy of depositions taken by the party against whom costs are allowed. Deposition copies, therefore, are plainly not one of those "[i]tems not mentioned in this section": The Legislature has expressly stated how many copies may be included as recoverable costs; and, in our view, the trial court has no discretion under section 1033.5, subdivision (c)(4), to permit recovery for additional copies even if the prevailing party is able to demonstrate those copies were reasonably necessary to the conduct of the litigation.

■ Code of Civil Procedure section 1033.5, subdivision (a)(12), is no different: This provision allows the recovery of the cost of photocopies of exhibits, but only if they were reasonably helpful to aid the trier of fact. Because the Legislature has expressly stated in subdivision (a)(12) what is allowable (exhibits used at trial that are reasonably helpful) and implicitly what is not, the discretion granted in section 1033.5, subdivision (c)(4), to

---

costs, whether awarded under section 1033.5, subdivision (a), or section 1033.5, subdivision (c)(4), as is the requirement that "[a]llowable costs shall be reasonable in amount." (§ 1033.5, subd. (c)(3).) Subdivision (c)(2), in other words, is a *limitation* on recoverable costs, not an *authorization* for an award of costs not otherwise permitted by statute. (See *Ripley v. Pappadopoulos* (1994) 23 Cal.App.4th 1616, 1623 [28 Cal.Rptr.2d 878] [§ 1033.5 "provides general conditions to which costs are subject"].)

[6] Code of Civil Procedure section 1033.5, subdivision (b), provides, "The following items are not allowable as costs, except when expressly authorized by law: [¶] (1) Fees of experts not ordered by the court. [¶] (2) Investigation expenses in preparing the case for trial. [¶] (3) Postage, telephone, and photocopying charges, except for exhibits. [¶] (4) Costs in investigation of jurors or in preparation for voir dire. [¶] (5) Transcripts of court proceedings not ordered by the court."

award costs for items not mentioned in section 1033.5 is simply inapplicable. Accordingly, we reverse the award of costs in favor of Copley Press, Inc., as to this item.

*Travel costs to attend depositions.*

The gravamen of Seever's argument against the award of costs for mileage for the use of counsel's private car to attend depositions in Los Angeles is based on the following: an allowance of 37 cents per mile is more than a witness is entitled to under Code of Civil Procedure section 1033.5, subdivision (a)(3) in the amount of 20 cents per mile; and the statute does not state that an attorney's mileage is a recoverable cost.

Copley argues that the only cost claimed in this category was mileage lower than the IRS reimbursement rate of 37.5 cents per mile in effect at the time. Copley further contends that the office of Copley's counsel was located in San Diego from the inception of the controversy with Seever. Thus, Copley's counsel was required to travel to Los Angeles on many occasions to attend no less than 30 deposition sessions. Copley is quick to point out that no claim was submitted for hotel or meal expenses.

■ Copley further maintains that this very issue was decided in *Thon v. Thompson* (1994) 29 Cal.App.4th 1546 [35 Cal.Rptr.2d 346], where the losing party challenged the prevailing party's claim for airfare, hotel and travel expenses incurred by Bakersfield-based counsel to attend depositions in San Diego where the action was filed. The *Thon* court held at page 1548 that "[s]ection 1033.5, subdivision (a)(3) does not limit reimbursement for deposition travel to travel by attorneys practicing in the court's jurisdiction" and refused to read into the statute any such restriction. This court agrees with Copley that the trial court was well within its discretion in awarding travel costs to depositions.

*Expert fees under Code of Civil Procedure section 998.*

Seever maintains Copley's Code of Civil Procedure section 998 offer was invalid, thus rendering the cost award for $62,131 erroneous. Copley's offer stated: "Copley will pay plaintiff statutory costs, including attorneys' fees, incurred to the date of this offer in the amount determined by the Court according to proof. This amount is in addition to the $200,001.00 Copley agrees to pay plaintiff as stated above."

■ Seever relies on *Berg v. Darden* (2004) 120 Cal.App.4th 721, 727 [15 Cal.Rptr.3d 829] for the general proposition: "There are two important reasons statutory compromise offers must be clear and specific. First, from

the perspective of the offeree, the offer must be sufficiently specific to permit the recipient meaningfully to evaluate it and make a reasoned decision whether to accept it, or reject it and bear the risk he may have to shoulder his opponent's litigation costs and expenses. [Citation.] Thus, the offeree must be able to clearly evaluate the worth of the extended offer." We do not take issue with this general proposition. In this case, however, can it be said that the future attorney fees and statutory costs in an amount to be determined by the court according to proof in *this* action render the Code of Civil Procedure section 998 offer uncertain and invalid in spite of the sum certain set forth in the specific amount of $200,001? We think not. If such were the case, as a matter of logic, no statutory offer under section 998 would dare venture into the murky water of stating a sum certain for future expenses which would be virtually beyond calculation or estimation by reason of the vagaries of the litigation process.

■ Copley, on the other hand cites to the case of *Elite Show Services, Inc. v. Staffpro, Inc.* (2004) 119 Cal.App.4th 263, 269 [14 Cal.Rptr.3d 184] for the proposition that " 'a sum equal to the amount of reasonable attorneys' fees and taxable costs' " contained in a Code of Civil Procedure section 998 offer, without mentioning a specific amount, does not render the section 998 offer invalid should the offeree fail to obtain a more favorable award at time of trial. The appellate court reasoned at pages 269–270 that "a settlement offer that includes an agreement to pay reasonable attorney fees is analogous to the inclusion of an award of unspecified costs in a judgment, a very commonplace occurrence. The fact that the amount of reasonable costs (in this case, fees) must be determined thereafter does not render the offer fatally uncertain."

■ We agree with the holding of the appellate court in *Elite, supra*, 119 Cal.App.4th 263, and find no error in the trial court's award pursuant to Code of Civil Procedure section 998. However, assuming Copley's section 998 offer nevertheless is deemed "reasonable" and a cost award against Seever appropriate, there remains the issue of the amount of that award. Section 998 requires the amount to be "reasonable." Given the purpose of the statute, reasonableness must be measured by considerations beyond whether it was reasonable for the offering party to have incurred the expense. In our view, the trial court also must take account of the offeree's economic resources in determining what is a "reasonable" cost award.

If the goal of Code of Civil Procedure section 998 is to encourage fair and reasonable settlements—and not settlements at any cost—trial courts in exercising their discretion must ensure the incentives to settle are balanced

between the two parties. Otherwise less affluent parties will be pressured into accepting unreasonable offers just to avoid the risk of a financial penalty they can't afford. Thus, when two competing parties possess vastly disparate economic resources, this may require the trial courts to "scale" the financial incentives (in this instance the section 998 cost awards) to the parties' respective resources.

This is especially important in the context of litigation under FEHA (California Fair Employment and Housing Act; Gov. Code, § 12900 et seq.) and similar laws. In those cases, the United States Supreme Court in *Christiansburg Garment Co. v. EEOC*[7] and California courts as well[8] already have demonstrated sensitivity to the imbalance inherent in allowing equal cost-sifting between unequal parties. Those federal and California decisions deny defendants their attorney fees and discretionary costs in such cases out of concern shifting these litigation expenses to what ordinarily are modest- or low-income individuals would unduly discourage these plaintiffs from litigating legitimate claims.

It is true Code of Civil Procedure section 998 introduces a new factor into the equation. This code section is designed to create economic incentives on both parties to settle rather than try their lawsuits. To do so, both sides must face some economic consequences if it turns out they miscalculate and lose. Thus, seldom would a court properly deny a successful defendant its entire section 998 cost award, even in a FEHA case. But consistent with the rationale of *Christiansburg* and like California decisions, it is entirely appropriate and indeed necessary for trial courts to "scale" those awards downward to a figure that will not unduly pressure modest- or low-income plaintiffs into accepting unreasonable offers.

██ Because the court here made no inquiry about Seever's financial situation, we do not know whether the cost award allowed here represents an unduly powerful settlement incentive to a litigant of Seever's means. But it could well be the case, given what the record does reveal about Seever's occupation and employment situation. Accordingly, we reverse and remand for a hearing on this issue.

---

[7] *Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412, 422 [54 L.Ed.2d 648, 98 S.Ct. 694].

[8] *Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro* (2001) 91 Cal.App.4th 859, 865 [110 Cal.Rptr.2d 903], and cases cited therein.

## DISPOSITION

The judgment is affirmed. Postjudgment orders are reversed as to the award of costs of exhibits not used at trial and as to costs awarded under Code of Civil Procedure section 998 as expert witness fees. The matter is remanded for further evidentiary hearing in accordance with the views expressed herein. Each side to bear its own costs on appeal.

Perluss, P. J., and Johnson, J., concurred.

On August 22, 2006, the opinion was modified to read as printed above.