Filed 11/14/18

# CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| FELIX HUERTA, | B277164, B281303 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC554145) |
| v. | |
| KAVA HOLDINGS, INC., | |
| Defendant and Respondent. | |

CONSOLIDATED APPEALS from a judgment and a postjudgment order of the Superior Court of Los Angeles County, Ruth Ann Kwan, Judge. Judgment affirmed; order reversed.

Shegerian & Associates, Carney R. Shegerian and Jill McDonell for Plaintiff and Appellant.

Horvitz & Levy, Peter Abrahams, Bradley S. Pauley, Dean A. Bochner; Stokes Wagner, Arch Y. Stokes, Peter B.

---

\* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, only the Introduction, parts I. F. and II. C., and the Disposition are certified for publication.

Maretz, Diana L. Dowell and Adam L. Parry for Defendant and Respondent.

## INTRODUCTION

Defendant Kava Holdings, Inc., dba Hotel Bel-Air (defendant) terminated two restaurant servers after they were involved in an altercation during work. One of the fired employees, plaintiff Felix Huerta, sued defendant on a variety of legal theories, most of which were dismissed before or during trial. The trial court granted defendant's motion for nonsuit as to plaintiff's claim for retaliation under the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.), and allowed the jury to decide plaintiff's FEHA causes of action for harassment based on a hostile work environment, discrimination, and failure to prevent harassment and/or discrimination. The jury returned a verdict in defendant's favor.

Postjudgment, the trial court found plaintiff's action was not frivolous and denied defendant's motion for attorney fees, expert fees and costs under Government Code section 12965, subdivision (b) (section 12965(b)). Based on plaintiff's rejection of defendant's pretrial Code of Civil Procedure section 998[1] settlement offer, however, the trial court awarded defendant $50,000 in costs and expert witness fees under that statute.

In the unpublished portion of the opinion, we affirm the judgment. The trial court properly granted nonsuit on plaintiff's FEHA retaliation claim and did not prejudicially limit his counsel's closing argument.

---

[1] With the exception of section 12965(b), all undesignated statutory references will be to the Code of Civil Procedure.

2

In the published portion of the opinion, we note that effective January 1, 2019, section 998 will have no application to costs and attorney and expert witness fees in a FEHA action unless the lawsuit is found to be "frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so."[2]  For litigation that predates the application of the amended version of section 12965(b), we hold section 998 does not apply to nonfrivolous FEHA actions and reverse the order awarding defendant costs and expert witness fees pursuant to that statute.  (*Arave v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (2018) 19 Cal.App.5th 525 (*Arave*).)

# I.    FACTUAL AND PROCEDURAL BACKGROUND[3]

### A.    *The Altercation and Plaintiff's Termination*

The precipitating event triggering this lawsuit occurred on December 21, 2013, and was captured by several video surveillance cameras.  Plaintiff and Atanas Kolev were working the same shift as front servers in one of the hotel's restaurants.  All the guests had departed, and the restaurant staff was engaged in "side work," i.e., putting items away and preparing for the next shift.

---

[2]    Section 12965(b), as amended by Statutes 2018, chapter 955, section 5.

[3]    The jury trial spanned more than three weeks; but on appeal, plaintiff raises only two issues related to the conduct of the trial itself.  Accordingly, this portion of the opinion will focus on evidence relevant to the retaliation claim, with an emphasis on testimony favorable to plaintiff.  We will not address damages or expert witness testimony or delve with detail into the evidence that pertained only to the harassment and discrimination causes of action.

3

As of that date, Kolev had worked for defendant for approximately two years. He was born in Bulgaria and moved to the United States in 2003. Plaintiff had been with defendant longer. He was born in Mexico and came to California in 1988, when he was 15 years old.

Kolev described the altercation as follows: He felt plaintiff routinely shirked side work duties. This particular evening, angry because plaintiff kept "disappearing" during the side work, Kolev confronted him. Plaintiff responded by calling Kolev "a [expletive] loser."[4] In his own words, Kolev became "angry" and "overreacted." He and plaintiff walked toward each other, talking loudly. Kolev said they should take their argument outside and then he pushed plaintiff.

According to plaintiff, when Kolev swore at him that evening, he called Kolev a loser, but did not use profanity. Plaintiff did not think he and Kolev were shouting at each other. Kolev started across the room and plaintiff walked toward him, not backing down. Kolev grabbed plaintiff by the throat. Plaintiff told him, " 'You're done. I'm going to report you right now.' "

At that point, other employees intervened. The two men walked away from each other.

Plaintiff immediately reported the incident to the manager on duty, Michael Pekarsky. Plaintiff described the confrontation, but did not state Kolev previously harassed or belittled him because of plaintiff's race or national origin. Plaintiff did not tell

---

[4]     It was common knowledge among the restaurant staff that Kolev's wife left him. Kolev interpreted the "loser" remark as referring to that fact.

4

Pekarsky the incident had anything to do with race or national origin.

At Pekarsky's request, plaintiff stayed in the office and prepared a written statement on the computer. Plaintiff's signed statement read in full:

> I still have tables and doing some closing paper work, and went to deliver the full bottles of wine to the main bar and when I was coming back, then [Kolev] started asking me what I've been doing all night. I told him I've been taking care of my tables, because I got most of the late tables inside. I told him I was taking the bottles and doing whatever side work I can. Then he started cursing me calling, "you piece of [expletive]". He was walking toward the kitchen and cursing at me loud. Then I say "you're a loser" then he came back to me and I asked him "what are you going to do?". And he grabbed me by the neck. Then I told him I was going to report it [to] a manager and to security as well. But then he said lets [*sic*] go and finish this @ the parking lot, I just walk away and reported to mike the manager. . . [.] ps this is not the first time th[at] he threatened me. . [. . I] have more witnesses from other times using a very offensive verbage [*sic*]. . calling me worthless useless piece of [expletive].

In the meantime, Pekarsky informed hotel security about the situation and located Kolev in the kitchen. Kolev also

5

provided a statement. Security separately escorted the two men off the property. Pekarsky suspended both men pending further investigation.

The investigation included obtaining written statements from other employees still in the restaurant when the confrontation occurred. None of the statements indicated Kolev bullied or taunted plaintiff because he was Hispanic or from Mexico.

According to Denise Flanders, defendant's general manager, the Human Resources (HR) department followed up with plaintiff concerning the "p.s." in plaintiffs statement to determine the nature of Kolev's previous threats. Plaintiff was not responsive to the efforts.

Flanders, HR director Jason Brown, and restaurant manager Adam Crocini collectively made the decision to terminate both men on December 24, 2013, for violating the "Pledge," defendant's code of conduct.[5] They agreed plaintiff was

---

[5] The Pledge is a written contract signed by every employee. Plaintiff received a copy of the Pledge and underwent training as to its requirements. The Pledge advises that certain unacceptable conduct, e.g., "[e]ngaging in disorderly conduct, including fighting, threats of violence, physically or verbally abusing another team member, . . . or using obscene language or gestures in the [h]otel" may result in immediate termination without any intervening discipline.

The Pledge encourages employees "to meet and discuss suggestions, problems or concerns with management" and emphasizes its open door policy. Employees are required to immediately report harassment to management or HR. Retaliation for such reporting is prohibited.

a conscientious and respected employee, but found he engaged in disorderly conduct that warranted immediate termination.

## B.    *Post-Termination Reports of Harassment*

Within days of plaintiff's termination, three coworkers—all Hispanic—complained to the HR director that plaintiff had been the victim of sustained harassment by Kolev because of his race and national origin.  Before the fight, Kolev harassed other Hispanic employees and made racist comments, but plaintiff bore the brunt of Kolev's verbal attacks.  The HR director checked the department's files and confirmed there had not been any previous complaints concerning Kolev.  The HR director also spoke to the restaurant's managers, who said they had not observed any such behavior before plaintiff's termination.

## C.    *The Complaint*

Plaintiff initiated this action on August 8, 2014.  The original complaint—although considerably narrowed in scope by the time the jury began deliberations—remained the operative pleading.  Plaintiff sued the hotel and several management individuals.  The complaint included 11 causes of action and sought general and punitive damages based on various legal theories.  Defendant was named in every cause of action; the individuals were named only in the cause of action for intentional infliction of emotional distress.

Plaintiff alleged six FEHA causes of action.  Five were based on race, national origin, and ancestry (collectively, race)[6]: discrimination, harassment, failure to present discrimination and

_____

[6]    "Race" was the collective designation used by the trial court and counsel for these three factors.  For consistency, we adopt this designation as well.

7

harassment, retaliation for complaining of discrimination or harassment, and wrongful termination in violation of public policy. In the sixth FEHA cause of action, plaintiff alleged he was retaliated against for taking a medical leave under the California Family Rights Act. Plaintiff alleged three factual predicates for the FEHA race-based claims: harassment by Kolev; harassment and discrimination by various supervisors, unrelated to Kolev's conduct; and discrimination as a substantial motivating factor in the decision to terminate plaintiff's employment.

Plaintiff also sought damages based on breach of an implied contract that he could be fired only for cause; defendant's negligently hiring and retaining supervisors who harassed and retaliated against him; and defendant's negligent supervision of its employees, permitting them to harass plaintiff.

### D. Pretrial Proceedings

All the individuals plaintiff sued were dismissed before trial, either voluntarily or by summary judgment. The trial court granted summary adjudication for defendant on plaintiff's causes of action for breach of implied contract to terminate only for cause, negligent hiring, and retaliation for taking CFRA leave.

On April 27, 2016, shortly before the trial began, defendant served plaintiff with a section 998 settlement offer in the sum of $375,000, with the litigants bearing their own attorney fees, costs, and litigation expenses. Plaintiff did not accept the offer, but countered with his own section 998 demand in the sum of $1.55 million.

### E. Jury Trial

The matter proceeded to a jury trial. Trial evidence included the following:

8

Before December 21, 2013, several coworkers urged plaintiff to report Kolev's ongoing verbal harassment to HR.  The coworkers did not report Kolev's harassment themselves because they believed plaintiff should take the responsibility.

Plaintiff testified he did not report the harassment "because sometimes the managers [were] around, and they didn't do anything about it."  He thought Pekarsky, when he was a restaurant captain, overheard some of Kolev's comments, but did not respond and actually might have laughed at them on occasion.  Plaintiff also recalled Kolev's making a comment about " '[expletive] Mexicans, can't speak English' " during a staff meeting that Pekarsky and the restaurant manager attended, but was "not sure every manager heard that."

Plaintiff testified Kolev "would just out of the blue come towards" him, cursing at him and calling him a " '[expletive] Mexican.' "  He would say, " 'You [expletive] Mexican, get out of my face.  I don't like you.  I hate you.  Don't talk to me,' just for no reason."  Kolev also said he had been trained to kill while serving in the Bulgarian army, so plaintiff should not confront or fight him.

Kolev denied he discriminated against plaintiff or anyone else based on race.  He was "antiracist."  He characterized the exchanges as workplace camaraderie and insisted there was "nothing extreme or discriminatory . . . nothing that was meant to harm anybody.  [¶]  They were calling me that I'm a terrorist, and I have seven wives and a goat.  I . . . understood the nature of the jokes.  It was . . . joking."  Kolev made fun of the way plaintiff

spoke, but said he was not the only employee who did so.[7]  Kolev was also rude to coworkers who were not Hispanic.

At the close of evidence, plaintiff dismissed all causes of action except the FEHA claims for retaliation, harassment, discrimination, and failure to prevent harassment or discrimination.  Defendant moved for nonsuit.  The trial court granted a nonsuit only as to the retaliation claim, finding nothing in plaintiff's written statement or interviews with HR that could "be construed by a reasonable trier of fact [as] reporting a protected activity."[8]  Although the trial court determined the evidence to support plaintiff's remaining FEHA causes of action (harassment, discrimination, and failure to prevent harassment or discrimination) was suspect, it was "strong enough . . . to go to the jury."  The jury's verdict on all remaining causes of action was in defendant's favor.

### F.    Postjudgment Proceedings

As the prevailing party in a FEHA action, defendant sought costs, expert witness fees, and attorney fees pursuant to section 12965(b).  As the prevailing party that obtained a result more favorable than the sum it was willing to settle for, defendant sought the same costs and fees pursuant to section 998.

---

[7]    Plaintiff spoke English with an accent, talked rapidly, and was sometimes difficult to understand.

[8]    The trial court granted defendant's nonsuit motion on the retaliation cause of action on June 9, 2016.  The trial court minutes for June 10, 2016 mistakenly report defendant's motion for nonsuit as to retaliation was denied; on that date, the trial court denied defendant's motion for nonsuit on the discrimination cause of action.

Defendant's memorandum of costs was in the total amount of $111,242.83, which included $47,322.50 in expert witness fees. Defendant asked for $1,318,955 in attorney fees.

Plaintiff moved to tax and/or strike defendant's costs, arguing section 12965(b) precluded an award of costs to defendant as prevailing party unless the trial court determined plaintiff's action was " ' "unreasonable, frivolous, meritless or vexatious." ' " (*Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1387, quoting *Christiansburg Garment Co. v E. E. O. C.* (1978) 434 U.S. 412, 421 (*Christiansburg*).) Plaintiff opposed the request for attorney fees on the same basis.

Almost six months of briefing and collateral motions followed. During this period, defendant submitted a revised memorandum of costs in the amount of $98,863.59. This memorandum eliminated costs incurred before service of the section 998 offer. After a hearing, the trial court took the motions under submission and issued a detailed written ruling one month later.

The trial court first analyzed each item of claimed post-settlement offer ordinary costs (§ 1033.5)[9] and determined the requested amounts were necessary and reasonable. Nonetheless, finding plaintiff's action was not frivolous, the trial court determined section 12965(b) precluded awarding defendant ordinary costs, expert witness fees, and attorney fees.

The trial court then considered each category of post-settlement offer costs and analyzed whether they could be

---

[9]    These costs included jury fees, deposition costs, service of process fees, expert witness fees, models/blowups/exhibit photocopies, and court reporter fees.

awarded based on the rejected section 998 settlement offer. The trial court concluded defendant was not entitled to postoffer attorney fees because the action was not frivolous. It did, however, award defendant its postoffer ordinary costs and expert witness fees pursuant to section 998. Although the trial court previously found defendant's incurred costs to be necessary and reasonable, the trial court reduced the award to $50,000 based on plaintiff's economic circumstances.

Plaintiff timely appealed from the judgment and the postjudgment order awarding defendant costs and expert witness fees pursuant to section 998. We ordered the appeals consolidated for all purposes.

## II. DISCUSSION

### A. *Nonsuit Was Properly Granted on the Retaliation Cause of Action*

FEHA prohibits workplace harassment and discrimination based on a number of factors, including race, national origin, and ancestry. (Gov. Code, § 12940, subd. (a).) An employee who reports a FEHA violation engages in "protected activity for which [he can]not be subjected to retaliation." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*); Gov. Code, § 12940, subd. (h).)

An employee's cause of action against his employer for unlawful retaliation under FEHA includes the following elements: (1) the employee engaged in a FEHA-protected activity; (2) the employer subjected plaintiff to an "adverse employment action;" and (3) the employee's protected activity "was a substantial motivating reason for" the employer's action. (CACI No. 2505; *Yanowitz, supra,* 36 Cal.4th at p. 1042.) If a trial court determines as a matter of law that the plaintiff's

12

evidence of retaliation is insufficient to permit the cause of action to go to the jury, nonsuit is appropriate. (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291 (*Nally*).)

On appeal, we review this issue de novo (*Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1542). We affirm if our independent review leads us also to conclude as a matter of law that no trier of fact could find plaintiff was terminated in retaliation for reporting workplace harassment or discrimination. (*Nally, supra,* 47 Cal.3d at p. 291.) In determining whether a nonsuit should be affirmed, we accept plaintiff's evidence as true, indulge "every legitimate inference" from it, and disregard conflicting evidence. (*Ibid.*)

Under these standards, we find as a matter of law plaintiff's evidence fell short of satisfying the threshold requirement that plaintiff engaged in protected activity. Plaintiff concedes he did not "report the assault explicitly as racially motivated." Nevertheless, he argues there was enough evidence of Kolev's bigotry and abuse to permit the jury to decide whether the December 21, 2013 argument "had a racial component and was related to race discrimination and/or harassment." Yes, there was: This was a primary theme in plaintiff's closing argument (see, *post,* fn. 10). Evidence that Kolev was bigoted and abused plaintiff based on plaintiff's race was relevant to the FEHA causes of action presented to the jury (harassment, discrimination, and the failure to prevent either), as was evidence that the altercation itself between the two men was racially motivated.

The issue before us, however, is different. In reviewing whether defendant was entitled to judgment as a matter of law on the retaliation claim, the question is whether plaintiff's *report*

13

of harassment or discrimination based on race was a "substantial motivating factor" in the decision to terminate him. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232.) We begin by analyzing whether plaintiff engaged in FEHA-protected activity, i.e., did he protest and report a FEHA violation that occurred in the workplace?

On the night of the incident, plaintiff did not complain to Pekarsky that Kolev harassed him based on race, national origin, or ancestry. Rather, he reported the verbal and physical assault that occurred minutes earlier, without mentioning it was the latest in a series of race-based run-ins. Witnesses provided statements concerning only the evening's confrontation. No one stepped forward to complain of ongoing harassment by Kolev. At trial, plaintiff testified he intentionally never reported Kolev's harassment; the record confirmed he never complained of it before his termination.

Plaintiff was fired for engaging in the confrontation with Kolev, not for reporting it. The confrontation, as described to defendant's decision makers, violated defendant's code of conduct, not FEHA.

Although facts concerning Kolev's poor treatment of Hispanic coworkers subsequently came to light, neither plaintiff nor the other employees who submitted statements to Pekarsky following the altercation—but before plaintiff's termination—referred to race. The statements pegged Kolev as a crass, unpleasant coworker, but did not assert he harassed Hispanic coworkers based on race.

Plaintiff presented no evidence that Flanders, Brown or Crocini received reports or were aware of racist conduct by Kolev before they decided to terminate both employees. All three

14

decision makers testified they terminated plaintiff based solely on his admitted role in the altercation with Kolev, which constituted a violation of defendant's code of conduct.

We accept as true testimony that Pekarsky and plaintiff's coworkers heard Kolev use profanity and never escalated the issue to HR, although they should have. But that testimony was presented in the context of Kolev's use of foul language that did not include racial slurs. Even assuming foul language in the workplace that does not include ethnic denigration constitutes a FEHA violation, the evidence was undisputed plaintiff never reported it. Without evidence that plaintiff reported a FEHA violation—i.e., that plaintiff engaged in protected activity— as a matter of law, plaintiff cannot prevail on a FEHA retaliation claim. (*Nally, supra,* 47 Cal.3d at p. 291.)

### B. *Plaintiff Forfeited His Challenge to the Trial Court's Ruling Concerning Closing Argument*

#### 1. Overview

Plaintiff next argues the trial court prejudicially erred by limiting his counsel's closing argument, "preclud[ing] the jury from holding defendant liable . . . for Kolev's harassing conduct." Plaintiff asserts, "Kolev's assault on December 21, 2016 was the strongest evidence supporting the hotel's liability for its failure to take corrective action. By not being able to consider this evidence, the jury was precluded from properly assigning the hotel liability. Therefore, the [t]rial [c]ourt's erroneous limitation of the scope of Huerta's closing argument was prejudicial and reversible error."

The issue arose during the jury instruction discussion between the trial court and counsel. Counsel agreed CACI No. 2521A was appropriate. That instruction advises jurors plaintiff

15

has the burden to prove, among other elements, he "was subjected to unwanted harassing conduct because of his race" and "the harassing conduct was severe or persuasive."

The trial court and counsel then turned to CACI No. 2523, which provides a nonexhaustive list of conduct that qualifies as harassment within the context of a FEHA action. Counsel agreed the trial court should instruct with option (a) that "verbal harassment, such as obscene language, demeaning comments, slurs, or threats" constitutes harassing conduct. Plaintiff also wanted the trial court to give option (b), which provides that harassing conduct includes "physical harassment such as unwanted touching, assault, or physical interference with normal work or movement." Defendant disagreed, noting the Kolev was fired the first time he touched plaintiff.

After an exchange with counsel, the trial court agreed to give the physical harassment language as plaintiff requested, but did not want jurors misled by an attempt "to bootstrap this in and make a harassment cause of action based on the December 21st conduct, [for] which the employer did take action." Plaintiff's counsel assured the trial court he was "not saying . . . [the confrontation] itself is harassment, but [wanted to argue that] Kolev's motivation in targeting [plaintiff] that day . . . was based on his racial animus as evidenced by the prior harassing conduct." The trial court responded, "You can argue that. I don't have any issue," and then added, "I'm not going to allow you to say, 'Oh, [the confrontation] is physical harassment that [defendant] didn't do anything about.' Because [it] clearly did. [¶] And if you're going to argue that, I'm not going to give [the physical harassment instruction]." Plaintiff's counsel replied simply, "Understood, Your Honor."

16

No more was said on the subject.  A recurring theme in plaintiff's closing argument was that but for Kolev's ongoing racially-motivated verbal harassment, the December 21, 2013 confrontation never would have occurred, and plaintiff would not have been terminated.[10]

        2.     Analysis

We never presume trial court error.  (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655.)  Reversal is warranted only where there has been a miscarriage of justice.  (Cal. Const., art. VI, § 13.)  To be entitled to a reversal, an appellant must demonstrate trial court error and prejudice as the result of the error.  (*Widson v. International Harvester Co.* (1984) 153

---

[10]    The following excerpts from plaintiff's counsel's closing argument illustrate the point:

1.    "Regardless how you slice the pie of reasons . . . that [plaintiff] was terminated, if racial harassment and race bias hadn't come before December 21st, 2013, if it had not existed in that workplace, December 21st, 2013 does not ever occur.  There is no incident as defendant calls it, or assault and battery as we call it."

2.    "But for [plaintiff's] race, nothing ever occurs on December 21st."

3.    "[T]hat event from December 21st, 2013 never occurs without [plaintiff] having the previous harassment and the mistreatment by Mr. Kolev, the[] server [the hotel] kept on the floor for over a year . . .  [¶]  . . . But if you look at the . . . buildup of the acrimony [by plaintiff] as he's being harassed for a year-plus as of December 2013, what explodes on December 21st . . . never happen[s]."

4.    " 'Mexican trash.' . . . Not even ten days after [the hotel] fired [plaintiff] . . . they knew that the person who had caused the assault and battery had used terms like this . . . ."

Cal.App.3d 45, 53.) Additionally, an appellant must support his challenge with cogent argument, citations to relevant authorities, and accurate references to the record: "[C]iting cases without any discussion of their application to the present case results in forfeiture . . . [and w]e are not required to examine undeveloped claims or to supply arguments for the litigants." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*); Cal. Rules of Court, rule 8.204.) As a general rule, an appellant who fails to object in the trial court forfeits the issue on appeal. (*Gray1 CPB, LLC v. SCC Acquisitions, Inc.* (2015) 233 Cal.App.4th 882, 897 (*Gray1*).)

As noted, plaintiff did not object in the trial court to the exchange or to the court's decision to give the instruction he requested, provided plaintiff's counsel did not argue to the jury that the one instance of physical contact by Kolev constituted actionable, i.e., severe or pervasive, harassment under FEHA. Plaintiff's counsel did not protest that the ruling unfairly limited his closing argument or would preclude the jury from finding that Kolev harassed plaintiff based on race.

On appeal, however, plaintiff cites section 647 and asserts this issue is preserved because no objection is required when the trial court gives, refuses to give, or modifies a jury instruction. But the trial court gave the standard CACI No. 2523 language just as plaintiff requested; there was no refusal or modification. A plaintiff is not aggrieved when the trial court gives an instruction he requested. Section 647 has no application; and without a timely objection in the trial court, the issue is forfeited on this ground. (*Gray1, supra,* 233 Cal.App.4th at p. 897.)

Additionally, plaintiff has not suggested in what manner his closing arguments were unfairly limited. His contentions on

18

appeal are conclusory and lack citations to the record or to relevant authority. The issues are forfeited on this basis as well. (*Allen, supra,* 234 Cal.App.4th at p. 52.)

### C. Section 998 Does Not Apply to This Nonfrivolous FEHA Action

#### 1. Overview

In awarding defendant its ordinary costs and expert witness fees pursuant to section 998, but reducing the award from a sum accepted as necessary and reasonable to an amount that reflected plaintiff's limited economic resources, the trial court relied on *Seever v. Copley Press, Inc.* (2006) 141 Cal.App.4th 1550 (*Seever*) and *Holman v. Altana Pharma US, Inc.* (2010) 186 Cal.App.4th 262 (*Holman*). (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Both *Seever* and *Holman* predate *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97 (*Williams*), where the Supreme Court held section 12965(b), which controls the award of costs in FEHA actions, is an "express exception" to section 1032, subdivision (b). (*Williams*, at p. 105.) Additionally, since the trial court entered its postjudgment order in this case, the legal landscape has expanded to include *Arave, supra,* 19 Cal.App.5th 525. In *Arave,* the Court of Appeal tackled *Holman* head-on and held section 998 does not apply in nonfrivolous FEHA actions.

For the reasons that follow, we find the *Arave* analysis and result persuasive. We hold the general policies behind section 998 must yield to the specific policies concerning costs and

19

attorney and expert witness fee awards in nonfrivolous FEHA actions.[11]

We begin our analysis by discussing the law applicable to prevailing party costs in civil actions generally (§§ 1032, 1033.5) and in FEHA actions specifically (§ 12965(b)). We then review the authorities relied upon by the trial court and the interplay between those authorities and section 998, the statute designed "to encourage the settlement of lawsuits before trial . . . by punishing a party who fails to accept a *reasonable* offer from the other party." (*Hurlbut v. Sonora Community Hospital* (1989) 207 Cal.App.3d 388, 408.)

---

[11] The Legislature agrees. Section 12965(b) has been amended, effective January 1, 2019, to add the following bold language in the concluding sentence: "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees, **except that, notwithstanding Section 998 of the Code of Civil Procedure, a prevailing defendant shall not be awarded fees and costs unless the court finds the action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so**."

We also emphasize nothing in our opinion is intended to apply to FEHA actions deemed "frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so." In those cases, the trial court retains discretion to award fees and costs pursuant to section 12965(b). (*Williams, supra,* 61 Cal.4th at p. 115; *Arave, supra,* 19 Cal.App.5th at p. 554.)

20

2.   Prevailing party costs:  Civil Actions v. FEHA
     Actions

Generally, the prevailing party in "any action or proceeding" is entitled to costs as a matter of right.  (§ 1032, subd. (b).)  By statute, a defendant against whom a plaintiff recovers no relief is a "prevailing party."  (*Id.*, subd. (a)(4).)  A trial court has no discretion to deny prevailing party status to such a defendant.  (*Charton v. Harkey* (2016) 247 Cal.App.4th 730, 738 (*Charton*).)

A trial court also has no discretion to deny the prevailing party its ordinary costs; they are to be awarded "as a matter of right," unless a statute expressly dictates otherwise. (§ 1032, subd. (b).)  Section 1033.5 lists the ordinary costs that must be awarded to a prevailing party.  The fees of expert witnesses, unless ordered by the trial court, are not recoverable as ordinary costs.  (*Id.,* subd. (b)(1).)  Nor are attorney fees, unless authorized by law or the parties' contract.  (*Id.,* subd. (a)(10).)

In addition to being automatic, cost awards to the prevailing party pursuant to section 1032, subdivision (b) are symmetrical, i.e., the prevailing party, whether a plaintiff or a defendant, is entitled to them.  (*Charton*, *supra*, 247 Cal.App.4th at p. 738.)

On the other hand, an award of costs to the prevailing party in a FEHA action is never a matter of right, but is always within a trial court's discretion.  (§ 12965(b); *Williams, supra,* 61 Cal.4th at p. 108.)  Notably, that discretion extends to awarding

21

the prevailing party in a FEHA action not just the ordinary litigation costs, but also attorney fees and expert witness fees.[12]

As always, however, a trial court's discretion has boundaries. The demarcation here is an asymmetrical one; the trial court's discretion to award costs—including attorney fees and expert witness fees—to a prevailing defendant in a FEHA action is not coextensive with the discretion it possesses when a plaintiff is the prevailing party.

The asymmetrical standard was articulated by the United States Supreme Court 40 years in *Christiansburg, supra,* 434 U.S. 412. There, the Supreme Court recognized trial courts have discretion to award attorney fees to the prevailing plaintiff in an Equal Employment Opportunity Commission action simply because plaintiff prevailed. The Supreme Court held that discretion does not extend to an award of attorney fees to a prevailing defendant unless the trial court also finds the plaintiff's "claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." (*Christiansburg, supra,* at p. 422.) California courts, of course, adhere to *Christiansburg's* asymmetrical standard for awards of attorney fees in FEHA actions. (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 985.)

In *Baker v. Mulholland Security & Patrol, Inc.* (2012) 204 Cal.App.4th 776, this court applied the *Christiansburg*

---

[12] Section 12965(b), as originally enacted in 1980, did not give trial courts the discretion to award expert witness fees to the prevailing party in a private FEHA action. The Legislature amended the section in 1999 to add that discretion, abrogating the holding in *Davis v. KGO-T.V., Inc.* (1998) 17 Cal.4th 436. (*Williams, supra,* 61 Cal.4th at p. 106, fn. 1.)

asymmetrical standard to expert witness fees as well: "We agree the standard applicable to attorney's fees should apply to expert witness fees for a prevailing FEHA defendant. Expert fees, just like attorney's fees, are not ordinary litigation costs which are routinely shifted under Code of Civil Procedure sections 1032 and 1033.5. Like attorney's fees, expert fees should be treated differently than ordinary litigation costs because they can be expensive and unpredictable, and could chill plaintiffs from bringing meritorious actions." (*Id.* at p. 783.)

Finally, in *Williams, supra,* 61 Cal.4th 97, the California Supreme Court held the *Christiansburg* standard applies to the award of ordinary costs as well as attorney fees[13] when the defendant prevails in a nonfrivolous FEHA action: "To reiterate, under that standard a prevailing *plaintiff* should ordinarily receive his or her costs and attorney fees unless special circumstances would render such an award unjust. [Citation.] A prevailing *defendant,* however, should not be awarded fees and costs unless the court finds the action was objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so." (*Id.* at p. 115.)

3.      Section 998 and FEHA Actions

In addition to the asymmetrical standard, the law is now well settled that section 12965(b) is an express exception to the prevailing party cost provisions in section 1032, subdivision (b). Section 1032, subdivision (b) does not apply in FEHA actions, as

---

[13]      Expert witness fees were not an issue in *Williams*, and the Supreme Court did not address that category of costs in the FEHA context.

the trial court acknowledged.  (*Williams, supra,* 61 Cal.4th at p. 109.)

What had not been settled, though, is whether section 998 applies in nonfrivolous FEHA actions when a plaintiff refuses a defendant's reasonable statutory settlement offer, but fails to achieve a better result.  Under this scenario, appellate courts traditionally discussed section 998's applicability by cost category, i.e., ordinary costs, attorney fees, and expert witness fees.  The trial court followed that formula and determined defendant was not entitled to section 998 attorney fees, but did award ordinary costs and expert witness fees pursuant to section 998, albeit in a reduced sum based on plaintiff's economic resources.  In so ruling, the trial court relied on a trio of pre-*Williams* appellate decisions:

The trial court denied defendant its postoffer attorney fees under section 998, citing *Mangano v. Verity, Inc.* (2008) 167 Cal.App.4th 944 (*Mangano*).  In *Mangano*, the trial court granted the defendant employer's summary judgment motion in a FEHA action.  Defendant then sought an award of expert witness fees and attorney fees incurred after it served a section 998 settlement offer.  The trial court awarded the defendant expert witness fees, but denied its request for attorney fees.  Both sides appealed; the Court of Appeal affirmed.

No one contended on appeal the FEHA action was frivolous.  (*Mangano, supra,* 167 Cal.App.4th at p. 951, fn. 10.)  With that understanding, *Mangano* held the *Christiansburg* standard applied and there was no "persuasive argument for allowing the application of section 998 to supplant the established standard that seeks to deter frivolous suits while providing adequate support and incentive for meritorious actions."  (*Id.* at p. 951.)

24

Accordingly, it affirmed the trial court's denial of an award of attorney fees to the prevailing defendant.[14]

Citing *Seever, supra,* 141 Cal.App.4th 1550, the trial court granted defendant's request for section 998 postoffer ordinary costs, but in a reduced amount based on plaintiff's economic resources. *Seever* involved an award of ordinary costs and expert witness fees to the prevailing defendant whose section 998 offer was rejected.

Nowhere in *Seever* does one find the words "frivolous" or "nonfrivolous." *Seever's* initial citation to *Christiansburg* was in the context of "the imbalance inherent in allowing equal cost-shifting between unequal parties." (*Seever, supra,* 141 Cal.App.4th at p. 1562.) *Seever* attributed the denial of attorney fees and discretionary costs to prevailing defendants in a FEHA action to judicial concerns that "shifting these litigation expenses to what ordinarily are modest- or low-income individuals would unduly discourage these plaintiffs from litigating legitimate claims." (*Ibid.*)

*Seever* did not cite or make reference to section 12965(b). Instead, the appellate panel appeared to accept that the strong public policy behind section 998 compelled its application in

---

[14]     On the other hand, *Mangano* also affirmed the grant of expert witness fees to the prevailing defendant pursuant to section 998. That portion of the decision is not published (*Mangano, supra,* 167 Cal.App.4th at p. 948), however, so we have no insight into the appellate panel's reasoning on that score, other than to observe *Christiansburg* was an attorney fees case and did not involve a claim for expert witness fees.

FEHA actions,[15] and then focused on the potential inequities of shifting costs to a plaintiff whose economic circumstances were typically more modest than those of the defendant. To that end, *Seever* fashioned a "means" test to fairly weight economic incentives and consequences: "Thus, seldom would a court properly deny a successful defendant its entire section 998 cost award, even in a FEHA case. But consistent with the rationale of *Christiansburg* and like California decisions, it is entirely appropriate and indeed necessary for trial courts to 'scale' those awards downward to a figure that will not unduly pressure modest- or low-income plaintiffs into accepting unreasonable offers. [¶] Because the [trial] court here made no inquiry about Seever's financial situation, we do not know whether the cost award . . . represents an unduly powerful settlement incentive to a litigant of Seever's means." (*Seever, supra,* 141 Cal.App.4th at p. 1562.)

The trial court relied on *Holman, supra,* 186 Cal.App.4th 262 to award defendant its section 998 postoffer expert witness fees, also in a reduced amount, per *Seever*. In *Holman,* the Court of Appeal held a trial court has discretion to award the prevailing employer in a FEHA case expert witness fees under section 998 without first establishing the plaintiff's case was frivolous. (*Id.* at p. 280.) Where the FEHA action is not frivolous, however, the trial court must "scale" an award of expert witness fees to take

---

15      *Seever* observed that section 998 "is designed to create economic incentives on both parties to settle rather than try their lawsuits. To do so, both sides must face some economic consequences if it turns out they miscalculate and lose." (*Seever, supra,* 141 Cal.App.4th at p. 1562.)

26

into account the plaintiff's economic resources.  (*Id.* at pp. 283-284.)

Although it predated *Williams, Holman* presciently "assume[d] for purposes of this appeal that . . . the *Christiansburg* standard appl[ies] when not only attorney fees, but also expert witness fees, are awarded under section 12965 to a prevailing defendant."  (*Holman, supra,* 186 Cal.App.4th at p. 280.)  *Holman* rejected, however, the notion that section 12965(b) was an express exception to section 1032, subdivision (b) prevailing cost provisions.  (*Holman*, at p. 281.)  That conclusion led to *Holman's* reliance on *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985 (*Murillo*) to analyze whether section 998 authorized an award of expert witness fees in FEHA actions.

In *Murillo,* the Supreme Court held the prevailing party cost provisions in the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.) are not " 'express' exception[s]" to section 1032, subdivision (b).  (*Murillo, supra,* 17 Cal.4th at p. 991.)  Having reached that conclusion, the Supreme Court "likewise conclude[d]" the Song-Beverly Act provided no impediment to awarding expert witness fees to the prevailing defendant whose section 998 settlement offer was rejected: "[T]he requirements for recovery of costs and fees under section 998 must be read in conjunction with section 1032(b), including the requirement that section 998 costs and fees are available to the prevailing party '[e]xcept as otherwise *expressly* provided by statute.'  (§ 1032(b), italics added.)  Because the cost-shifting provisions of the Song-Beverly Act do not 'expressly' disable a prevailing defendant from recovering section 998 costs and fees in general, or expert witness fees in particular, we find nothing in the Act prohibiting the trial court's exercise of discretion to

27

award expert witness fees to seller" pursuant to section 998. (*Murillo*, at p. 1000, fn. omitted.)

*Holman* found no inconsistency with *Mangano, supra*, 167 Cal.App.4th 944. *Holman* concluded, again relying on *Murillo*, that "attorney fees are subject to different rules than those applicable to other costs." (*Holman, supra,* 186 Cal.App.4th at p. 283.) But erasing the distinction between the treatment of attorney fees and costs pursuant to section 12965(b) was the point in *Williams*. (*Williams, supra,* 61 Cal.4th at p. 112 ["The Legislature's choice of statutory language indicates it intended the same rule apply to ordinary litigation costs as to attorney fees"].)

*Williams* did not involve section 998, so its *Murillo* discussion is limited to the express exception/section 1032, subdivision (b) issue. In 2018, however, our colleagues in Division Two of the Fourth Appellate District analyzed both *Murillo* and *Williams,* surveyed the development of the law, and concluded there is no statutory authority to award section 998 postoffer fees and costs in a nonfrivolous FEHA action. (*Arave, supra,* 19 Cal.App.5th at p. 553.)

*Arave* reasoned as follows: Section 12965(b) is an express exception to section 1032, subdivision (b). Section 998 "operates only as an adjustment to cost awards under Section 1032(b), [so] it follows that Section 12965(b) overrides Section 998(c) . . . . [I]f a defendant may not *obtain* an award of costs under Section 1032(b) [because] plaintiff's claim are nonfrivolous, the trial court may not *augment* an award of costs by awarding expert witness fees under Section 998(c)." (*Arave, supra,* 19 Cal.App.5th at p. 553.)

We find *Arave's* logic unassailable.  The Legislature expressly pegs section 998 to section 1032.  (§ 998, subd. (a).)  In non-FEHA actions, a "defendant is entitled under section 998 to those costs incurred after the settlement offer to which a prevailing party would be entitled under section 1032."  (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1112-1113.)  In non-FEHA actions, where the special prevailing party cost statute is not an express exception to section 1032, a defendant is also entitled under section 998 to its postoffer costs.  (*Murillo, supra,* 17 Cal.4th at p. 1000.)  But in nonfrivolous FEHA cases, the prevailing party cost provisions are express exceptions to section 1032.  (*Williams supra,* 61 Cal.4th at p. 105.)  It follows, then, that section 998 does not apply in nonfrivolous FEHA actions.  (*Arave, supra,* 19 Cal.App.5th at p. 553.)

Analyzed thusly, for cases that predate the amendment to section 12965(b), we see no reason to differentiate between the treatment of ordinary costs, attorney fees, and expert witness fees in nonfrivolous FEHA actions.  The language in section 12965(b) indicates all three categories are subject to the same rules.

## DISPOSITION

The judgment is affirmed.  The postjudgment order awarding respondent costs and expert witness fees pursuant to section 998 is reversed.  In the interests of justice, no costs on appeal are awarded.


DUNNING, J.[*]


We concur:


RUBIN, Acting P. J.


GRIMES, J.

---

[*]    Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.