Filed 6/18/26  Dupuy v Gumm CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| KENNETH MICHAEL DUPUY, | |
| Plaintiff and Respondent, | E085486 |
| v. | (Super.Ct.No. CVCO2407540) |
| ARTHUR LESTER GUMM, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Tamara L. Wagner, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

McMahon Lynch Law Firm, Inc., Robert J. Lynch and Matthew A. Slater for Defendant and Appellant.

Kenneth Michael Dupuy, in pro. per.; for Plaintiff and Respondent.

1

When petitioner Kenneth Michael Dupuy's first request for a civil harassment restraining order (CHRO) pursuant to Code of Civil Procedure section 527.6,[1] against respondent Art Gumm was denied in January 2024, the trial court reminded the two men that they were neighbors.  However, soon after that, Gumm resumed a pattern of harassment involving honking his loud train-horn, racing up and down the street, revving the engine of his car so that it released black soot and screeched his tires in front of Dupuy's house.  Dupuy sent a letter to Gumm notifying him of his intent to sue, which angered Gumm, so Gumm ramped up his annoying behavior intentionally.

Dupuy filed a second request for a CHRO based on the incidents occurring after he sent the notice of suit in November 2024.  At the hearing on the second CHRO request, the court took judicial notice of the records in the first CHRO file, and, after hearing evidence of Gumm's conduct following the denial of the first CHRO request, including Gumm's admission that he intentionally made noise to annoy Dupuy, granted the second CHRO request.  Gumm appeals.

On appeal, Gumm argues that the trial court prejudicially erred in excluding his proffered evidence regarding the history of the dispute between the parties leading up to the first CHRO request.  We affirm.

---

[1] All further statutory references are to the Code of Civil Procedures unless otherwise indicated.

BACKGROUND

Because the trial court took judicial notice[2] of the first CHRO file and proceedings, in Riverside County Superior Court case No. CVCO2305637, we provide a brief summary of the prior proceeding for context.

Between 2017 or 2018, when Gumm moved into the house next door to Dupuy, and 2023, when the original CHRO request was filed , relations between Dupuy and Gumm became increasingly toxic. Early on, in 2017, Gumm was upset because Dupuy blocked his driveway making it difficult to back his motor home out of the driveway and eventually had the city of Corona paint a portion of the curb red. Gumm also found alcohol bottles in the bushes in his backyard and, assuming that Dupuy was responsible,

---

[2] Although the trial court took judicial notice of its records and files related to the earlier proceeding, we have taken judicial notice of particular trial court files in case No. CVCO2305637 on our own motion, because those documents were not included in the original appellate record. (Evid. Code, §§ 452, subd. (d), 459, subd.(a).)

In this appeal, Gumm filed a request to augment the record with various exhibits introduced in the earlier proceeding, along with a reporter's transcript of a hearing conducted on January 4, 2024. We previously indicated the augment request would be considered as a request for judicial notice. The reporter's transcript for the January 4, 2024, hearing is already included in the record on appeal, as a part of the clerk's transcript in the current appeal, so that portion of the request is superfluous. The exhibits included in the augment request are irrelevant to our review of the proceedings held in the current matter, insofar as Gumm did not actually offer them into evidence after admitting they were offered with respect to incidents occurring prior to November 4, 2024, the date when Gumm escalated his harassing conduct, of which the trial court had already taken judicial notice. Gumm's declaration, which he did offer into evidence at the December 2024 hearing, was not admitted because he was present to testify. Because the documents are irrelevant to the second CHRO request filed on November 7, 2024, we deny the request for judicial notice and/or augmentation of the record.

3

although Dupuy did not drink, Gumm began putting the alcohol bottles he found on Dupuy's fence or in Dupuy's mailbox. Things went downhill from there.

Gumm began sounding his loud train-horn multiple times a day when he would either exit his driveway or enter it, or play music loudly, or rev the engine of his sports car and spin the tires such that they screeched or caused black soot to emit from his exhaust in front of Dupuy's home. Text messages exchanged between Dupuy and Gumm devolved into name-calling, souring the relationship further.

In September 2023, matters reached a head when Gumm continued to engage in the annoying pursuits after Dupuy and his family returned from a traumatic trip to Mexico where the family was robbed at gun point and then involved in a serious automobile accident. Dupuy filed his initial request for civil harassment restraining order in December 2023, and a full evidentiary hearing was conducted on January 10, 2024.

At the hearing on that first request for CHRO, the court considered all the physical and testimonial evidence proffered by both parties and concluded at that time, that the complaints were going "both ways here." After Dupuy testified about the loud train-horn and the exhibitions of speed Gumm stated, "I mean, to be honest with you, I do it for safety reasons mostly when my grandkids are there and the rest of it is to be an asshole. I'm being honest. The guy is annoying and we do not like each other."

In reaching its decision, the court indicated that "it's kinda two-fold here," and that the court felt the harassing behavior was "going both ways." Gumm informed Dupuy in open court, "[I]f you are willing to drop this I'm willing to move on." Dupuy just wanted

4

the sounding of the horn to stop and the "recent events that led to us filing this petition."[3] The court denied the restraining order.

For a time, Gumm's actions did "slow down." However, little by little, the train-horn honking resumed, which Dupuy tried to dismiss. Then, sometime in October 2024, Gumm sped out, stopped at his driveway, and gunned his truck engine right in front of Dupuy's home, releasing a plume of black smoke from his exhaust, and things began to get worse. On November 4, 2024, Dupuy threatened to sue Gumm, because the train-horn, the speeding intentionally up and down his driveway onto the public streets, disturbed Dupuy, affecting his ability to focus on his work, which he did from his home.

On November 7, 2024, Dupuy filed the current request for CHRO. The CHRO request alleged that Gumm continued the harassing behaviors, establishing an intentional pattern that has escalated with each subsequent year. The request for CHRO alleged that on November 4, 2024,[4] after receiving a formal demand letter from Dupuy to cease his disruptive actions, Gumm immediately responded by aggressively escalating his behavior, including honking his horn seven times in succession, creating a loud disturbance that shook Dupuy's home and startled everyone inside, increasing the volume

---

[3] These events were apparently related to the claim regarding Gumm driving his vintage vehicle at high speeds, possibly with a modified exhaust, up and down his driveway and onto the cul-de-sac, in a reckless manner, without regard for peoples' safety, including children on the road.

[4] In the second CHRO request, Dupuy states the escalation began on November 4, 2023, but this is apparently a typographical error, because his testimony indicated that the escalation began on November 4, after a period following the previous hearing that occurred in January 2024.

of his music to an extreme level, using profanity audible from Dupuy's property, and racing up and down his driveway while honking an additional four times.

An evidentiary hearing was held on the second CHRO request (case No. CVCO2407540) on December 18, 2024, at which the court took judicial notice of case No. CVCO2305637. At the hearing, Dupuy testified to the escalating harassment that had occurred since the previous proceeding, acknowledging that since the previous last court date, the harassment had slowed down. But, he explained, little by little, the train-horn honking continued. Then there was the incident in October 2024, and things got worse and worse.

Depuy explained that on November 4, 2024, he had sent a cease and desist letter to Gumm via FedEx, and, that same day and the day afterwards, Gumm honked his horn multiple times, and played loud obnoxious music, among other disturbances that were recorded over a period of several days on Dupuy's security system, and played in open court.[5]

In his testimony, Gumm admitted he was angry, and that he was intentionally making noise to disturb Dupuy. Gumm explained that Dupuy was continuing to harass Gumm's family on a regular basis since the previous hearing, so Gumm was "paying it forward" and it had been "a tit-for-tat" since the Gumm family moved in, years before. When the court asked Gumm to address the current, ongoing harassment, that is, to the incidents about which Dupuy had just testified, Gumm indicated there were additional

---

[5] Dupuy's home security system recorded multiple incidents, which were played in open court.

text messages in which Dupuy threatened him, relating to the period before the original CHRO request, that were reflected in documents he had brought with him to court. When the court asked Gumm to address the current situation, Gumm indicated he needed to go back to the beginning when everything started.

To enlarge on the alleged harassment by Dupuy, Gumm brought up multiple incidents, as well as complaints about acts committed by Dupuy since the disagreements about parking along a particular curve that occurred years earlier and continued since the first CHRO action (case No. CVCO2305637). When the court asked if he wanted to refer back to the 2023 case, Gumm indicated he did. The court reminded Gumm that it had taken judicial notice of the earlier proceeding and that Gumm should respond to the current allegations, specifically the recorded acts of harassment that the court had just watched, but Gumm continued to refer to matters that predated the decision in the previous CHRO action.

Pressed again by the court, Gumm then referred to different problems other neighbors had experienced with Dupuy and again described conflicts leading up to a 2020 property line dispute. The court reminded Gumm it did not intend to go back to 2020 and urged Gumm to focus on the claims relating to the video evidence it had just watched. Gumm responded by repeating that he was angry and was intentionally making noise to disturb Dupuy.

Based on the evidence presented, the court granted the second CHRO for a period of three years, restraining Gumm from harassment against Dupuy or members of Dupuy's

household, along with stay away and no-contact orders, and a prohibition against possessing firearms. Gumm appealed.

## DISCUSSION

On appeal, Gumm argues that the trial court committed reversible error by excluding the evidence he wished to admit at the hearing. Gumm explains that the trial court refused to allow him to present "any of the documentary evidence which he had brought with him to the hearing or to provide testimony regarding the contents of the evidence." Gumm further complains, without record support, that the trial court "did not even bother inquiring whether [Gumm] had brought new evidence which the court had not seen at the prior hearing." We disagree.

Section 527.6 provides in pertinent part: "At the hearing, the judge shall receive any testimony that is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." (§ 527.6, subd. (i)(1).)[6] This is consistent with the evidentiary principle that "No evidence is admissible except relevant evidence." (Evid. Code, § 350.) " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' " (Evid. Code, § 210; *Winfred D. v. Michelin North America, Inc.* (2008) 165 Cal.App.4th 1011, 1026.)

---

[6] Gumm has miscited the statutory provision relating to the hearing procedure under section 527.6.

8

"We review rulings on the admissibility of evidence for abuse of discretion, and reverse only where there is a clear showing the trial court exceeded the bounds of reason under all the circumstances." (*Arave v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (2018) 19 Cal.App.5th 525, 533, citing *People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 639–640.) In this respect, "it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)

Additionally, in light of Gumm's claim that the court did not inquire about the documentary exhibits he had brought, and whether they were new, it was Gumm's burden to make a specific offer of proof regarding the relevance of the proffered evidence. (Evid. Code, § 354; *People v. Schmies* (1996) 44 Cal.App.4th 38, 53.)

"The test of relevance is whether the evidence tends ' "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive. [Citations.]' [Citation.] The trial court has broad discretion in determining the relevance of evidence [citations] but lacks discretion to admit irrelevant evidence." (*People v. Carter* (2005) 36 Cal.4th 1114, 1166–1167.)

Here, the trial court took judicial notice of the proceedings related to Dupuy's first request for a CHRO, and reminded the parties that it had presided over the earlier evidentiary hearing, so it was aware of the history of acrimony between the neighbors. The court attempted to explain to Gumm that the question it had to decide was whether

9

harassment that had occurred after November 4, 2024, warranted a CHRO. Gumm, despite multiple opportunities, failed to offer any evidence of harassing conduct by Dupuy that occurred after January 10, 2024, the date of the trial court order denying injunctive relief in case No. CVCO2305637. Conduct occurring before the date of the previous hearing was not relevant to Dupuy's entitlement to injunctive relief from Gumm's conduct during the intervening time period after that hearing.

Gumm argues the "evidence was clearly relevant, as it showed the history of the dispute between [Dupuy] and [Gumm] and how it was reciprocal in nature." To the contrary, this statement demonstrates the evidence was *not* relevant, where it did not show reciprocal harassment after the previous CHRO hearing. The trial court indicated multiple times that it was familiar with the history of the neighbors' dispute culminating in case No. CVCO2305637, had heard the testimony of both parties at the hearing in that case, and viewed the numerous exhibits offered by both parties. Rehashing those events would merely involve an undue consumption of time where the trial court was already aware of the incidents and disagreements leading up to Dupuy's first CHRO request. The trial court has discretion to refuse to admit cumulative evidence. (Evid. Code, § 352; *Horn v. General Motors Corp.* (1976) 17 Cal.3d 359, 371.)

Gumm argues that "the trial court did not even bother inquiring whether [Gumm] had brought new evidence which the court had not seen at the prior hearing," but Gumm never offered that information in the face of the court's repeated reminders that the evidence needed to pertain to the ongoing, current harassment. After multiple attempts to focus Gumm's attention on the claims at hand, Gumm simply admitted he was

10

intentionally trying to bother Dupuy, tacitly admitting that the evidence was not relevant to the ongoing harassment.  There is nothing in the record to support the statement that Gumm brought new evidence to introduce.  Even if Gumm had attempted to make an offer of proof that the exhibits were not offered or shown at the prior hearing, Gumm still has not shown how they were relevant to Dupuy's claims regarding escalating harassment occurring *after* that hearing.

Gumm has not met his burden of proving that the court abused its discretion in excluding evidence that was not relevant to the current claims of harassment.  Moreover, given his admission that he intentionally harassed Dupuy, Gumm established the necessary elements warranting a CHRO against himself.

There was no abuse of discretion in excluding the irrelevant evidence.

### DISPOSITION

The judgment granting the injunction is affirmed.  Dupuy is awarded costs, if any.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
P. J.


We concur:

FIELDS_____
J.
RAPHAEL_____
J.

11